**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

SHAIDA BENSON, CAITLIN
CAMPBELL, CHELSEY DIDOMENICO,
AMY HUCKE, CRAIG LOONEY,
STEVEN PFISTER,
individually and on behalf of all others similarly
situated,

          Plaintiffs,

v.

CHARLOTTE'S WEB HOLDINGS, INC., a
Colorado Corporation,

          Defendant.

## CLASS ACTION COMPLAINT

Plaintiffs bring this Class Action Complaint against Defendant Charlotte's Web Holdings, Inc. ("Defendant"), individually and on behalf of all others similarly situated, and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

## NATURE OF THE ACTION

1.     This is a civil class action brought by Plaintiffs on behalf of consumers who purchased Defendant's "Soothing Scent Hemp Infused Cream" and "Unscented Hemp Infused Cream" (collectively the "Products") both of which are promoted as products containing hemp extract for personal use.

1

2.     Defendant formulates, manufactures, advertises, and sells the Products to consumers throughout the United States, including in the State of Illinois. Consumers seek out CBD skin products, such as the Products, for their skin soothing properties.[1]

3.     Further, CBD skin care products are often purchased to help minimize issues related to skin sensitivity, including redness and reactivity.[2]

4.     With knowledge of growing consumer demand for hemp extract products because of the claimed benefits from use, Defendant has marketed the Products both on line and on the product packaging as containing a certain amount of hemp extract and intentionally conceals that the Products actually contain an amount of hemp extract significantly less than the amount claimed both online and on the product packaging. Therefore, consumers seeking to alleviate their pain— often chronic pain—or seeking other alleged health benefits from Defendant's Products end up purchasing Products with negligent efficacy .

5.     Defendant's multiple and prominent systematic mislabeling of the Products form a pattern of unlawful and unfair business practices that harm the public.

6.     Accordingly, Plaintiffs and each of the Class Members have suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices as set forth herein, and seek compensatory damages and injunctive relief.

7.     Given the massive quantities of the Products sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for those affected.

---

[1] https://www.paulaschoice.com/expert-advice/skincare-advice/natural-skincare/cbd-oil-benefits-for-skin-can-help-acne-anti-aging.html.
[2] *Id.*

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from Defendant.

9.     This Court has personal jurisdiction over Defendant because it transacts business in the United States, including in this District, has substantial aggregate contacts with the United States, including in this District, engaged in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed itself of the laws of the United States.

10.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendant transacts business in this District, and at least one Plaintiff resides in this District.

## PARTIES

11.      Plaintiff Shaida Benson is a citizen of South Carolina who resides in West Columbia, South Carolina. Plaintiff Benson purchased the Unscented Hemp Infused Cream twice from 14 Carrot and Earth Fare Had Plaintiff Benson known the Products had an amount of hemp extract less than the amount represented on the product packaging, she would not have purchased them.

12.     Plaintiff Caitlin Campbell is a citizen of Oregon who resides in Aloha, Oregon. On December 1st, 2019, Plaintiff Campbell purchased two bottles of the Unscented Hemp Infused Cream for a total of $59.98 from AmazonHad Plaintiff Campbell known the Products had an

amount of hemp extract less than the amount represented on the product packaging, she would not have purchased them.

13.     Plaintiff Chelsey DiDomenico is a citizen of Tennessee who resides in Maryville, Tennessee. On June 23rd, 2019, Plaintiff DiDomenico purchased the Unscented Hemp Infused Cream for $49.99 from Kroger Marketplace Had Plaintiff DiDomenico known the Products had an amount of hemp extract less than the amount represented on the product packaging, she would not have purchased them.

14.     Plaintiff Amy Hucke is a citizen of Florida who resides in Coral Springs, Florida. On November 23rd, 2019 Plaintiff Hucke purchased the Soothing Scent Hemp Infused Cream for $49.99 from Lucky's Market Had Plaintiff Hucke known the Products had an amount of hemp extract less than the amount represented on the product packaging, she would not have purchased them.

15.     Plaintiff Craig Looney is a citizen of Florida who resides in Pompano Beach, Florida. On February 20th, 2018, Plaintiff Looney purchased two of the Soothing Scent Hemp Infused Cream for $55.00 each, from EBay.com.. Had Plaintiff Looney known the Products had an amount of hemp extract less than the amount represented on the product packaging, he would not have purchased them.

16.     Plaintiff Steven Pfister is a citizen of Illinois who resides in McHenry, Illinois. On November 1st, 2019, Plaintiff Pfister purchased the Soothing Scent Hemp Infused Cream for 49.99 and the Unscented Hemp Infused Cream for 49.99, both from CVS Pharmacy at 3900 W Elm Street, McHenry Illinois 60050. Had Plaintiff Pfister known the Products had an amount of hemp extract less than the amount represented on the product packaging, he would not have purchased them.

17.     Defendant Charlotte's Web Holdings, Inc. is a Colorado corporation with its principal place of business at 1600 Pearl St., Ste. 300, Boulder, CO 80302.

## FACTUAL ALLEGATIONS

18.     At all relevant times, Defendant has marketed its Products in a consistent and uniform manner representing that the Products contain "750 MG Hemp Extract". Defendant sells the Products in all 50 states on its website and in multiple high-profile retail stores such as Walmart, CVS, and others. Defendant also sells its products on Amazon, CVS online, and retail websites other than its own.

19.     However, none of the Products conform to the "750 MG Hemp Extract" representation. This common misrepresentation permeates throughout all the products and is located on the front of each of the Product's label. Further, each product contains this representation on the packaging in order to induce buyers to pay a premium and purchase the product over other moisturizing skin creams. As discussed throughout *infra*, none of the Products conform to the "750 MG Hemp Extract" representation.

**The Defendant's Product Packaging**

20.     On the front of the product packaging for the Soothing Scent Hemp Infused Cream, it states: "750mg of Hemp Extract".





21.     On the front of the product packaging for the Unscented Hemp Infused Cream, it states: "750mg of Hemp Extract".





22.    On the back of the Products' packaging, Defendant represents that the Unscented Hemp Infused Cream contains The World's Most Trusted Hemp Extract™.

23.    Despite Defendant's representations, independent testing has revealed that the Products contain an amount of hemp extract significantly less than the amount represented on the product packaging.

## Independent Testing Reveals the Products Contain
## Less Hemp Extract Than Advertised On The Label.

24.     Independent testing has revealed that, despite the Products' representations they contain "750 MG Hemp Extract", in reality they contain considerably less.

25.     750 MG of Hemp Extract equates to 1.06% of the 2.5 fl oz bottle for both the Products.

26.     On November 19, 2019, an outside lab, Botanacor, tested an Unscented Hemp Infused Cream, J8039D2, and found .23% total Cannabinoids in the product. This equates to approximately 177.5 MG of Hemp Extract. This is under the 1.06% advertisement of Hemp Extract, or 750 MG amount that Defendant represented on the front of the label. This report is attached hereto as **Exhibit A**.

27.     On November 19, 2019, an outside lab, Botanacor, tested an Unscented Hemp Infused Cream, K8016D4, and found .30% total Cannabinoids in the product. This equates to approximately 213 MG of Hemp Extract. This is under the 1.06% advertisement of Hemp Extract and 750 MG amount that Defendant represented on the front of the label. This report is attached hereto as **Exhibit B.**

28.     On November 19, 2019, an outside lab, Botanacor, tested Soothing Scent Hemp Infused Cream, K8015D3, and found .28% total Cannabinoids in the product. This equates to approximately 220.1 MG of Hemp Extract. This is under the 1.06% advertisement of Hemp Extract and 750 MG amount that Defendant represented on the front of the label. This report is attached hereto as **Exhibit C.**

29.     On November 19, 2019, an outside lab, Botanacor, tested a Soothing Scent Hemp Infused Cream, K8016D3, and found .30% total Cannabinoids in the product. This equates to approximately 220 MG of Hemp Extract. This is under the 1.06% advertisement of Hemp Extract

and 750 MG amount that Defendant represented on the front of the label. This report is attached hereto as **Exhibit D.**

30.     On November 19, 2019, an outside lab, Botanacor, tested a Soothing Scent Hemp Infused Cream, D9037D2, and found .50% total Cannabinoids in the product. This equates to approximately 347.9 MG of Hemp Extract. This is under the 1.06% advertisement of Hemp Extract and 750 MG amount that Defendant represented on the front of the label. This report is attached hereto as **Exhibit E.**

### Defendant's Misrepresentations and Omissions are Material to Consumers

31.     Consumers seek out Defendant's Hemp Extract Products specifically for the purported benefits Cannabidiol, or CBD provides. Consumers purchase such products due to their purported benefits such as ability to "soothe" sensitive skin with CBD ingredients rather than conventional moisturizing skin cream.

32.     Defendant's Hemp Infused Creams, which purport to contain 750mg of hemp extract, are sold for $49.99 for 2.5 fl. oz. Consumers pay a premium for these products over other skin creams and the CBD ingredients are the primary reason for that premium.

33.     Defendant thus misleads consumers into thinking they purchased a premium product which will provide greater health benefits because of the represented amount or quantities of hemp extract ingredients; however, independent testing has revealed that the amount of hemp extract in the Hemp Infused Creams is not what is advertised on the packaging of the Products and in reality is much less.

### Plaintiffs' Experiences

34.     Plaintiff Shaida Benson is a citizen of South Carolina who purchased the Unscented Hemp Infused Cream twice. Plaintiff Benson's first purchase was from 14 Carrot, her second was

from Earth Fare. Prior to purchasing the Products, Plaintiff Benson relied on the labeling of the Product as well as advertising for the Product, including a tv commercial advertising Charlotte's Web products, and believed that the Products contained the amount or quantities of the hemp extract ingredient and as such would alleviate the pain she suffers from in her hands and feet as a result of her neuropathy. She stopped purchasing the product after not experiencing any pain relief or health benefits. Had Plaintiff Benson known the Products had an amount of hemp extract less than the amount represented on the product packaging, she would not have purchased them.

35.     Plaintiff Caitlin Campbell is a citizen of Oregon who purchased two bottles of the Unscented Hemp Infused Cream for a total of $59.98 on December 1st, 2019 from Amazon. Prior to purchasing the Unscented Hemp Infused Cream, Plaintiff Campbell relied on the labeling of the Product as well as advertising for the Product, including, Defendant's representations which she read on www.amazon.com. Plaintiff Campbell bought the Unscented Hemp Infused Cream for the purported benefits of hemp extract it supposedly contained and hoped the Product would help alleviate her muscle spasms and pain. Plaintiff Campbell did not buy the product again because she did not believe that it provided any pain relief or other health benefits despite being so expensive. Had Plaintiff Campbell known the Products had an amount of hemp extract less than the amount represented on the product packaging, she would not have purchased them.

36.     Plaintiff Chelsey DiDomenico is a citizen of Tennessee who purchased the Unscented Hemp Infused Cream for $49.99 on June 23rd, 2019 from the Kroger Marketplace located at 507 North Foothills Plaza, Maryville, TN 37801. Prior to purchasing the Unscented Hemp Infused Cream, Plaintiff DiDomenico relied on the labeling of the Product as well as advertising for the Product, including representations she read on Defendant's website.  Plaintiff DiDomenico believed the Product could provide cosmetic benefits and relieve her lower back pain.

Plaintiff DiDomenico did not purchase the Unscented Hemp Infused Cream again because she believed that she was wasting her money and did not receive any health or cosmetic benefits. Had Plaintiff DiDomenico known the Products had an amount of hemp extract less than the amount represented on the product packaging, she would not have purchased them.

37.     Plaintiff Amy Hucke is a citizen of Florida who purchased the Soothing Scent Hemp Infused Cream for $49.99 on November 23rd, 2019 from Lucky's Market located at 9184 Wiles Road in Coral Springs, Florida 33067. Prior to purchasing the Soothing Scent Hemp Infused Cream, Plaintiff relied on the labeling of the Product as well as advertising for the Product as well as a recommendation of a store employee who recommended it to her for its supposed CBD potency. Plaintiff Hucke purchased the Soothing Scent Hemp Infused Cream seeking relief from pain in her shoulder, neck area, and lower back. Further, Plaintiff Hucke was seeking a hemp extract product which could alleviate her husband's Parkinson's disease and PTSD. After finding out that the Soothing Scent Hemp Infused Cream had an amount of hemp extract less than the amount represented on the product packaging, Plaintiff Hucke decided not to buy it again. Had Plaintiff Hucke known the product had an amount of hemp extract less than the amount represented on the product packaging, she would not have purchased it.

38.     Plaintiff Craig Looney a citizen of Florida who purchased the Soothing Scent Hemp Infused Cream two times for $55.00 each, from EBay.com. Plaintiff Looney relied on the labeling of the Product as well as advertising for the Product, including the representations he read on Defendant's website. Plaintiff Looney purchased the Products seeking relief from the pain in his aching back. Plaintiff Looney's Chiropractor recommended that he try a different brand after Plaintiff noted not experiencing the expected benefits from the Products. Had Plaintiff Looney

known the Products had an amount of hemp extract less than the amount represented on the product website, he would not have purchased them.

39.     Plaintiff Steven Pfister is a citizen of Illinois who purchased the Soothing Scent Hemp Infused Cream for $49.99 three times between September 2019 and the present as well as the Unscented Hemp Infused Cream for $49.99 three times between September 2019 and the present. Plaintiff Pfister purchased the Products from the CVS Pharmacy located at 3900 W Elm St., McHenry, Il 60050. Prior to purchasing the Products, Plaintiff Pfister relied on the labeling of the Product as well as advertising for the Product, including the representations he read on Defendant's website. Plaintiff Pfister purchased the Products seeking relief from the pain in his aching joints. Originally, Plaintiff Pfister purchased the 450mg sized Hemp Infused Balm; however, after not experiencing pain relief, he decided to purchase the Products which are advertised as containing 750mg of hemp extract. After still not experiencing the pain relief he desired, Plaintiff Pfister stopped purchasing the Products. Had Plaintiff Pfister known the Products contained an amount of hemp extract less than the amount represented on the product packaging, he would not have purchased them.

## CLASS ACTION ALLEGATIONS

40.     Plaintiffs bring this action individually and as representatives of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Class:

**National Class: All persons in the United States who, during the maximum period permitted by the law, purchased the Products primarily for personal, family or household purposes, and not for resale.**

41.     Plaintiffs brings this action on behalf themselves and the following Multi-State Class:

**Consumer Fraud Multi-State Class:  All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, Rhode Island, Washington and Wisconsin who, during the maximum period permitted by the law, purchased the Products primarily for personal, family or household purposes, and not for resale. (the "Consumer Fraud Multi-State Class").[3]**

42.     Plaintiffs Amy Hucke and Craig Looney, bring this action on behalf of themselves

and the members of the following State Class:

**Florida State Sub-Class: All persons in Florida who, during the maximum period permitted by the law, purchased the Products primarily for personal, family or household purposes, and not for resale.**

43.     Plaintiff Steven Pfister brings this action on behalf of himself and the members of

the following State Class:

**Illinois State Sub-Class: All persons in Illinois who, during the maximum period permitted by the law, purchased the Products primarily for personal, family or household purposes, and not for resale.**

44.     Plaintiff Caitlin Campbell brings this action on behalf of herself and the members

of the following State Class:

**Oregon State Sub-Class: All persons in Oregon who, during the maximum period permitted by the law, purchased the Products primarily for personal, family or household purposes, and not for resale.**

45.     Plaintiff Shaida Benson brings this action on behalf of herself and the members of

the following State Class:

---

[3] The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, prohibits both unfair and deceptive business acts and practices on the part of entities conducting business with consumers within the State of Illinois.  The States in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case as alleged herein: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201 *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A *et seq.*); Michigan (Mich. Comp. Laws § 445.901 *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010 *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1); New Jersey (N.J. Stat. § 56:9-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); Rhode Island (R.I. Gen. L. Ch. 6-13.1); Washington (Wash. Rev. Code § 19.86010, *et seq.*) and Wisconsin (WIS.  STAT. § 100.18, *et seq.*).

**South Carolina State Sub-Class:** **All persons in South Carolina who, during the maximum period permitted by the law, purchased the Products primarily for personal, family or household purposes, and not for resale.**

46.     Plaintiff, Chelsey DiDomenico brings this action on behalf of herself and the members of the following State Class:

**Tennessee State Sub-Class:** **All persons in Tennessee who, during the maximum period permitted by the law, purchased the Products primarily for personal, family or household purposes, and not for resale.**

47.     Specifically excluded from these definitions are (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; (3) Class Counsel; (4) Purchasers of the Products directly from the Defendant's website.

48.     As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and all Sub-Classes, including Plaintiffs.

49.     Plaintiffs seek only damages and equitable relief on behalf of themselves and the Class Members. Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class Members.

50.     Numerosity: Although the exact number of Class Members is uncertain at this time and can only be ascertained through discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

51.     Typicality: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased the Products that were manufactured and distributed by

Defendant. Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that, *inter alia*, they have incurred or will continue to incur damage as a result of overpaying for a product that contained a significantly lesser amount of hemp extract than advertised. Furthermore, the factual basis of Defendant's misconduct is common to all Class Members because Defendant has engaged in a systematic fraudulent behavior, that was deliberate, includes negligent misconduct, and results in the same injury to all Class Members.

52. <u>Commonality</u>: Plaintiffs have numerous questions of law and fact common to themselves and Class Members that predominate over any individualized questions. These common legal and factual issues include:

a. Whether the Products contain an amount of hemp extract less than the amount represented on the product packaging;

b. Whether Defendant's "750mg" representation is false and/or misleading;

c. Whether Defendant expressly warranted that the Products would conform to its "750mg" representation;

d. Whether Defendant impliedly warranted that the Products would conform to its "750mg" representation;

e. Whether Defendant breached its warranties by making the representations above;

f. Whether Defendant was unjustly enriched by making the representations and omissions above;

g. Whether Defendant's actions as described above violate the various state consumer protection laws as alleged herein;

h. Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, pay damages, and pay treble damages as a result of the above described practices.

53. <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class

actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

54.     Predominance and Superiority: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

55.     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

**COUNT 1**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of The National Class)**

56.     Plaintiffs bring this count on behalf of themselves and the National Class and repeat and re-allege all previous paragraphs, as if fully included herein.

57.     Defendant sold and Plaintiffs purchased the Products.

18

58.     Defendant represented in its marketing, advertising, and promotion of the Products that they contained "750 MG Hemp Extract".

59.     Defendant made these representations to specifically induce Plaintiffs and Class Members to purchase the Products.

60.     Defendant's representations that the Products contained "750 MG Hemp Extract" constituted part of the basis of the bargain between Defendant and Plaintiffs (and Class Members).

61.     As a direct and proximate result of Defendant's breaches of these express warranties, Plaintiffs and members of the Class have been damaged because they did not receive the products as specifically warranted by Defendant. Plaintiffs also paid a premium for Defendant's Products that did not conform to Defendant's express warranties.

62.     Plaintiffs were not required to notify Defendant of its breaches of warranty because: (i) the goods were sold for human ingestion; and (ii) Defendant had actual knowledge of the defect of the particular product.

**COUNT 2**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of The National Class)**

63.     Plaintiffs bring this count on behalf of themselves and the National Class and repeat and re-allege all previous paragraphs, as if fully included herein.

64.     UCC § 2-314 states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

65.     UCC § 2-314 has been adopted in:

   a)   Florida, Fla. Stat. Ann. § 672.314;
   b)   Illinois, 815 ILCS 505
   c)   South Carolina, S.C. Code §§ 36-2-314 and 36-2A-212.
   d)   Oregon, Or. Rev. Stat. § 72.3140 and 72A.2120.
   e)   Tennessee, Tenn. Code §§ 47-2-314 and 47-2A-212.

66.    As set forth above, Plaintiffs have standing to pursue this claim as they have suffered injury in fact and have lost money or property as a result of Defendant's actions.

67.    Defendant is a "merchant" within the meaning of UCC § 2-314 because it deals in the sale of the Products and holds itself out as "having knowledge or skill peculiar to" hemp extract skin creams as well as the ingredients being advertised as containing "750 MG Hemp Extract".

68.    Defendant has misled consumers into believing the Products were "750 MG Hemp Extract" when in fact the Products contain far less than 750 MG Hemp Extract. Defendant took advantage of Plaintiffs' and the Classes' trust and confidence in its Charlotte's Web brand, and deceptively included undesired ingredients represented to be absent within its Products and did not include the represented amount of the hemp extract in the Products.

69.    To be merchantable, a good must "[p]ass without objection in the trade under the contract description," be "fit for the ordinary purposes for which such goods are used," be "adequately contained, packaged, and labeled as the agreement may require," and "[c]onform to the promises or affirmations of fact made on the container or label if any." UCC § 2-314.

70.    Defendant breached the implied warranty of merchantability because the Products do not conform to the ingredient specifications on their labels and packaging and are not fit for their intended use .

71.    Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiffs and the Classes, not distributors who sold the Products. Moreover, Defendant exercises substantial control over which outlets can carry and sell the Products, which are the same places that Plaintiffs purchased them. In addition, Defendant's warranties provided on the labels of the Products are in no way designed to apply to the distributors that purchase the Products in bulk and then sell them on an individual basis to each consumer. Individual consumers are the ones who

ultimately review the labels, which Defendant knows, prior to making any purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumer who purchases the Products.

72.     Plaintiffs and the Classes sustained damages as a direct and proximate result of Defendant's breaches in that they paid a premium for the Products that they would not have otherwise paid. Plaintiffs and the Classes also did not receive the value of the Product they paid for—the Products are worthless or worth far less than Defendant represents due to its misbranding and mislabeling of the Products' hemp extract ingredients.

73.     Plaintiff and the Classes have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.

74.     Accordingly, Plaintiffs are entitled to injunctive relief, attorneys' fees and costs, and any other relief that the Court deems just and equitable.

75.     Plaintiffs, on behalf of themselves and all similarly situated Class members, demand judgment against Defendant for compensatory damages, pre- and post-judgment interest, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

76.     Plaintiffs were not required to notify Defendant of its breaches of warranty because: (i) the goods were sold for human ingestion; and (ii) Defendant had actual knowledge of the defect of the particular product.

### COUNT 3
### UNJUST ENRICHMENT
### (On Behalf of The National Class and in the Alternative to Counts 1-2)

77.     Plaintiffs bring this count, in the alternative to Counts I-III, on behalf of themselves and the National Class and repeat and re-allege all previous paragraphs, as if fully included herein.

78.     Plaintiffs conferred benefits on Defendant by purchasing the Products at a premium price.

79.     Defendant has knowledge of such benefits.

80.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of the Products. Retention of those moneys under these circumstances is unjust and inequitable because (a) Defendant falsely and misleadingly represented that the Products contain "750 MG Hemp Extract"; (b) Plaintiffs paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because they contained far less than 750 MG of Hemp Extract.

81.     This has resulted in injuries to Plaintiffs and members of the Class because they would not have purchased (or paid a price premium) for the Products had they known of the true composition of Defendant's Product.

82.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

**COUNT 4**
**VIOLATION OF THE STATE CONSUMER FRAUD ACTS**
**(On Behalf of the Consumer Fraud Multi-State Class)**

83.     Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully set forth herein.

84.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

85.     Plaintiffs and the other Members of the Consumer Fraud Multi-State Class have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Class because Plaintiffs and Members of the Consumer Fraud Multi-State Class have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

86.     As described herein, Defendant engaged in unfair and/or deceptive conduct, including, but not limited to, representing on its label for the Products that they contain "750 MG Hemp Extract" with no reasonable basis to do so.

87.     Defendant intended that Plaintiffs and each of the other Members of the Consumer Fraud Multi-State Class would rely upon its unfair and deceptive conduct and a reasonable person would in fact be misled by this deceptive conduct described above.

88.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other Members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

89.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT 5**
**Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(On Behalf of the Illinois Subclass and in the Alternative to Count 4)**

90.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

91.     Plaintiffs bring this Count on behalf of the Illinois Subclass.

92.     Plaintiffs and the Illinois Subclass members are consumers under the Illinois Consumer Fraud Act and Defendant is a "person" within the meaning of 815 Ill. Comp. Stat. 510/1(5).

93.     Defendant engaged, and continues to engage, in the wrongful conduct alleged herein in the course of trade and commerce, as defined in 815 ILCS 505/2 and 815 ILCS 510/2:

    a.   815 ILCS 505/2 (Illinois Consumer Fraud Act) prohibits:

> [u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act,' approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

    b.   815 ILCS 510/2 provides that:

> [A] person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; ... (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have...; (7) represents that goods or services are of a particular standard, quality, or grade... if they are not; ... [and] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

94.     The business practices of Defendant were unfair because Defendant knowingly sold Plaintiffs and the other Class members the Products that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiffs and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiffs and the other Class members or to competition under all of the circumstances.  Moreover, in light of Defendant's exclusive

knowledge of the Products containing not as much hemp extract as advertised, the injury is not one that Plaintiffs or the other Class members could have reasonably avoided.

95.     Defendant provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements and other information to consumers regarding the quality and nature of the Products such that it contained a certain amount of hemp extract which is not the case.

96.     Defendant engaged in unconscionable commercial practices in failing to reveal material facts and information about the hemp extract amount within the Products, which did, or tended to, mislead Plaintiffs and the Illinois Subclass about facts that could not reasonably be known by the consumer including but not limited to the fact that the Products did not have the amount of hemp extract that was stated on the Products' labeling and in the Products' marketing and advertising for the Products.

97.     Defendant made material representations and statements of fact to Plaintiffs and the Illinois Subclass members that resulted in Plaintiff and the Illinois Subclass reasonably believing the state of affairs to be other than what it actually was, such as that the Products stated on the label "750 MG Hemp Extract" which is not the case.  Plaintiffs reasonably relied on this labeling and representation when purchasing the Products.

98.      Defendant intended that Plaintiffs and the other members of the Illinois Subclass rely on their misrepresentations and omissions described above, so that Plaintiffs and other class members would purchase the Products.

99.     Had Defendant disclosed the omitted material or not misrepresented the characteristics of the Products, Plaintiffs and other members of the Illinois Subclass would not have purchased the Products or would have paid less for them.

100. The foregoing acts, omissions and practices proximately caused Plaintiffs and the other members of the Illinois Subclass to suffer actual damages in the form of, *inter alia*, loss of the benefit of the bargain, diminution in value, and other damages to be asserted at trial.

101. Defendant's conduct was knowing, intentional, and malicious, and demonstrated a complete lack of care and recklessness and was in conscious disregard for the rights of Plaintiffs and Illinois Subclass Members.

102. As a direct and proximate result of Defendant's unfair and deceptive trade practices, Plaintiffs and the other Class members have suffered ascertainable loss and actual damages. Plaintiffs and the other Class members who purchased the Products would not have purchased the Products, or, alternatively, would have paid less for them had the truth about the lower amount of hemp extract than advertised been disclosed. Plaintiffs and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under 815 Ill Comp. Stat. 505/1, *et seq.*

## COUNT 6
## VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, Fla. Stat. §§ 501.201, *et seq.* (On behalf of the Florida Subclass and in the Alternative to Count 4)

103. Plaintiffs Amy Hucke, Craig Looney, bring this Count on behalf of themselves and the Florida Subclass against Defendant and repeat and re-allege all previous paragraphs, as if fully included herein.

104. The Florida Deceptive Trade Practices Act ("FDUTPA") prohibits unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce.

105. By the acts and conduct alleged herein, Defendant has committed unfair or deceptive acts and practices by misrepresenting the Products contained "750 MG Hemp Extract" when in fact the Products contained significantly less.

106.    Defendant's business practices of marketing, advertising, and promoting the Products in a misleading, inaccurate, and deceptive manner by misrepresenting that the Products contained "750 MG Hemp Extract" is an unconscionable commercial practice, deceptive, and a misrepresentation, which constitutes multiple, separate violations of Fla. Stat. § 501.204(1).

107.    In marketing, advertising, and promoting the Products  to consumers, including Plaintiffs Amy Hucke, Craig Looney, and members of the Florida Subclass, as set forth in this Complaint, Defendant made material misrepresentations and omissions throughout the United States, including Florida.

108.    Defendant's false, misleading and deceptive statements and representations of fact were and are directed at consumers.

109.    Defendant's false, misleading and deceptive statements and misrepresentations of fact were and are likely to mislead reasonable consumers acting reasonably under the circumstances.

110.    Defendant's false, misleading and deceptive statements and representations of fact have resulted in consumer injuries and harm to the public interest.

111.    The foregoing deceptive acts and practices are misleading in a material way because Defendant fundamentally misrepresents the characteristics, ingredients, benefits, quality, and nature of the Products to induce consumers to purchase and pay a premium for them.

112.    Defendant's    unconscionable    commercial    practices,    false    promises, misrepresentations, and omissions set forth in this Complaint are material in that they relate to matters which reasonable persons, including Plaintiffs Amy Hucke, Craig Looney, and members of the Florida Subclass, would attach importance to in making their purchasing decisions.

113.    Plaintiffs and members of the Florida Subclass were injured because: (a) they would not have purchased the Products, or would not have purchased the Products on the same terms, had they known that the products in fact contained less hemp extract than advertised; (b) they paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because they contained less hemp extract content than advertised.

114.    As a result, Plaintiffs Amy Hucke, Craig Looney, and members of the Florida Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Products or the difference in value between the Products as advertised and the Products as actually sold. On behalf of themselves and other members of Florida Subclass, Plaintiffs Amy Hucke and Craig Looney, seek to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three times the actual damages, and reasonable attorneys' fees.

**COUNT 7**
**VIOLATIONS OF SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT,**
**S.C. Code Ann. §§ 39-5-10,** *et seq.*
**(On behalf of the South Carolina Subclass)**

115.    Plaintiff Shaida Benson brings this Count on behalf of herself and the South Carolina Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

116.    Defendant is a "person," as defined by S.C. Code Ann. § 39-5-10(a).

117.    South Carolina's Unfair Trade Practices Act (SCUTPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20.

118.    Defendant advertised, offered, or sold goods or services in South Carolina and engaged in trade or commerce directly or indirectly affecting the people of South Carolina, as defined by S.C. Code Ann. § 39-5-10(b).

119.    Defendant's business practices of marketing, advertising, and promoting the Products in a misleading, inaccurate, and deceptive manner by misrepresenting that the Products contained "750 MG Hemp Extract" is an unconscionable commercial practice, deceptive, and a misrepresentation, which constitutes multiple, separate violations of the SCUPTA.

120.    Defendant's acts and practices had, and continue to have, the tendency or capacity to deceive.

121.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

122.    Defendant's business acts and practices offend an established public policy, or are immoral, unethical, or oppressive.

123.    Defendant's unfair and deceptive acts or practices adversely affected the public interest because such acts or practices have the potential for repetition.

124.    Plaintiff Shaida Benson and members of the South Carolina Subclass were injured because: (a) they would not have purchased the Products, or would not have purchased the Products on the same terms, had they known that the products in fact contained less hemp extract than advertised; (b) they paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because they contained less hemp extract content than advertised.

125.    As a result, Plaintiff Shaida Benson and members of the South Carolina Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price

of the Products or the difference in value between the Products as advertised and the Products as actually sold. On behalf of herself and other members of South Carolina Subclass, Plaintiff Shaida Benson seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three times the actual damages, and reasonable attorneys' fees.

## COUNT 8
## VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT OF 1977
### Tenn. Code Ann. § 47-18-101, *et seq.*
### (On behalf of the South Tennessee Subclass)

126.    Plaintiff Chelsey DiDomenico brings this Count on behalf of herself and the Tennessee Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

127.    The Tennessee Plaintiff and the Tennessee State Subclass members are "natural persons" and "consumers" within the meaning of Tenn. Code § 47-18-103(2).

128.    Defendant is engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tenn. Code § 47-18-103(9).

129.    The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code § 47-18-104.

130.    Defendant's business practices of marketing, advertising, and promoting the Products in a misleading, inaccurate, and deceptive manner by misrepresenting that the Products contained "750 MG Hemp Extract" is an unconscionable commercial practice, deceptive, and a misrepresentation, which constitutes multiple, separate violations of the Tennessee CPA.

131.    Defendant's acts and practices had, and continue to have, the tendency or capacity to deceive.

30

132.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

133.    Defendant's business acts and practices offend an established public policy, or are immoral, unethical, or oppressive.

134.    Defendant's unfair and deceptive acts or practices adversely affected the public interest because such acts or practices have the potential for repetition.

135.    Plaintiff Chelsey DiDomenico and other members of the Tennessee Subclass were injured because: (a) they would not have purchased the Products, or would not have purchased the Products on the same terms, had they known that the products in fact contained less hemp extract than advertised; (b) they paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because they contained less hemp extract content than advertised.

136.    As a result, Plaintiff Chelsey DiDomenico and members of the Tennessee Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Products or the difference in value between the Products as advertised and the Products as actually sold. On behalf of herself and other members of Tennessee Subclass, Plaintiff Chelsey DiDomenico seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three times the actual damages, and reasonable attorneys' fees.

### COUNT 9
### VIOLATIONS OF OREGON UNLAWFUL TRADE PRACTICES ACT,
### Or. Rev. Stat. §§ 646.608, *et seq.*
### (On behalf of the Oregon Subclass)

137.    Plaintiff Caitlin Campbell, on behalf of herself and the Oregon Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

31

138.     Defendant is a "person," as defined by Or. Rev. Stat. § 646.605(4).

139.     Defendant engaged in the sale of "goods and services," as defined by Or. Rev. Stat.
§ 646.605(6)(a).

140.     Defendant sold "goods or services," as defined by Or. Rev. Stat. § 646.605(6)(a).

141.     Defendant advertised, offered, or sold goods or services in Oregon and engaged in
trade or commerce directly or indirectly affecting the people of Oregon.

142.     Defendant engaged in unlawful practices in the course of its business and
occupation, in violation of Or. Rev. Stat. § 646.608, including, *inter alia*, the following unlawful
practices: representing that its goods and services have approval, characteristics, uses, benefits,
and qualities that they do not have, in violation of Or. Rev. Stat. § 646.608(1)(e); representing that
its goods and services are of a particular standard or quality if they are of another, in violation of
Or. Rev. Stat. § 646.608(1)(g); advertising its goods or services with intent not to provide them as
advertised, in violation of Or. Rev. Stat. § 646.608(1)(i); and concurrent with tender or delivery of
its goods and services, failing to disclose any known material defect, in violation of Or. Rev. Stat.
§ 646.608(1)(t).

143.     Defendant's business practices of marketing, advertising, and promoting the
Products in a misleading, inaccurate, and deceptive manner by misrepresenting that the Products
contained "750 MG Hemp Extract" is an unconscionable commercial practice, deceptive, and a
misrepresentation, which constitutes multiple, separate violations of the Oregon Unlawful Trade
Practices Act.

144.     Defendant's representations and omissions were material because they were likely
to deceive reasonable consumers.

145.     Plaintiff Caitlin Campbell and other members of the Oregon Subclass were injured because: (a) they would not have purchased the Products, or would not have purchased the Products on the same terms, had they known that the products in fact contained less hemp extract than advertised; (b) they paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because they contained less hemp extract content than advertised.

146.     As a result, Plaintiff Caitlin Campbell and members of the Oregon Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Products or the difference in value between the Products as advertised and the Products as actually sold. On behalf of herself and other members of Oregon Subclass, Plaintiff Caitlin Campbell seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or two hundred dollars, whichever is greater, three times the actual damages, and reasonable attorneys' fees.

**<u>RELIEF DEMANDED</u>**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

a.       For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes and Plaintiffs' attorneys as Class Counsel;

b.       For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.       For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d.       For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.       For prejudgment interest on all amounts awarded;

f.      For an order of restitution and all other forms of equitable monetary relief;

g.      For injunctive relief as pled or as the Court may deem proper; and

h.      For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.


Dated: January 17, 2020

Respectfully submitted,


/s/ *Gary M. Klinger, Esq.*
**KOZONIS & KLINGER, LTD.**
Gary M. Klinger
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60630
Phone: 312.283.3814
gklinger@kozonislaw.com

Gary E. Mason
J. Hunter Bryson*
David K. Lietz*
**WHITFIELD BRYSON & MASON, LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Tel: 202-640-1168
gmason@wbmllp.com
hunter@wbmllp.com
dlietz@wbmllp.com

Charles E. Schaffer*
David C. Magagna, Jr.*
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

*pro hac vice to be filed

*Attorneys for Plaintiffs*

34