**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

SHAIDA BENSON, CAITLIN
CAMPBELL, CHELSEY DIDOMENICO,
AMY HUCKE, STEVEN PFISTER,
HADEL TOMA and ERIC FISHON,
individually and on behalf of all others similarly
situated,

                Plaintiffs,

v.

CHARLOTTE'S WEB, INC., a
Delaware Corporation,

                Defendant.

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs bring this Class Action Complaint against Defendant Charlotte's Web, Inc.

("Defendant"), individually and on behalf of all others similarly situated, and complain and allege

upon personal knowledge as to themselves and their own acts and experiences and, as to all other

matters, upon information and belief, including investigation conducted by their attorneys:

## NATURE OF THE ACTION

1.      This is a civil class action brought by Plaintiffs on behalf of consumers who

purchased Defendant's "Soothing Scent Hemp Infused Cream" and "Unscented Hemp Infused

Cream," (collectively the "Products") both of which are promoted as products containing hemp

extract for personal use.

2. Defendant formulates, manufactures, advertises, and sells the Products to consumers throughout the United States, including in the State of Illinois. Consumers seek out CBD and hemp extract skin products, such as these Products, for their skin soothing properties.[1]

3. Further, CBD and hemp extract skin care products are often purchased to help minimize issues related to skin sensitivity, including redness and reactivity.[2]

4. With knowledge of growing consumer demand for hemp extract products because of the claimed benefits from use, Defendant has marketed the Products both on line and on the product packaging as containing a certain amount of hemp extract and intentionally conceals that the Products actually contain an amount of hemp extract significantly less than the amount claimed both online and on the product packaging. Therefore, consumers seeking to alleviate their pain—often chronic pain—or seeking other alleged health benefits from Defendant's Products end up purchasing Products with negligent efficacy .

5. Defendant's multiple and prominent systematic mislabeling of the Products form a pattern of unlawful and unfair business practices that harm the public.

6. Accordingly, Plaintiffs and each of the Class Members have suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices as set forth herein, and seek compensatory damages and injunctive relief.

7. Given the massive quantities of the Products sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for those affected.

---

[1] https://www.paulaschoice.com/expert-advice/skincare-advice/natural-skincare/cbd-oil-benefits-for-skin-can-help-acne-anti-aging.html.
[2] *Id.*

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from Defendant.

9.      This Court has personal jurisdiction over Defendant because it transacts business in the United States, including in this District, has substantial aggregate contacts with the United States, including in this District, engaged in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed itself of the laws of the United States.

10.      In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendant transacts business in this District, and at least one Plaintiff resides in this District.

**PARTIES**

11.      Plaintiff Shaida Benson is a citizen of South Carolina who purchased the Unscented Hemp Infused Cream twice, each time for approximately $50.00. Plaintiff Benson first purchased the Unscented Hemp Infused Cream on June 5th, 2018 from 14 Carrot Whole Foods, at 5300 Sunset Blvd, Lexington, SC 29072. Her second purchase was on September 14th, 2019 from Earth Fare, at 3312-B Divine St, Columbia, SC 29205.  Prior to purchasing the Unscented Hemp Infused Cream, Plaintiff Benson viewed a television commercial advertising the pain relief benefits of Charlotte's Web products on May 27th, 2018. Furthermore, Plaintiff Benson read the labeling of the Unscented Hemp Infused Cream before making her June 5th, 2018 purchase at 14 Carrot Whole Foods. In making her purchasing decision, Plaintiff Benson relied on the television

commercial and product labeling. She believed that the Unscented Hemp Infused Cream contained the represented amount or quantities of the hemp extract ingredient and as such would alleviate the pain she suffers from in her hands and feet as a result of her neuropathy. She stopped purchasing the product after not experiencing any pain relief or health benefits. Had Plaintiff Benson known the Unscented Hemp Infused Cream had an amount of hemp extract less than the amount represented on the product packaging, she would not have purchased it.

12.     Plaintiff Caitlin Campbell is a citizen of Oregon who purchased two bottles of the Unscented Hemp Infused Cream for a total of $59.98 on December 1st, 2019 from Amazon. Prior to purchasing the Unscented Hemp Infused Cream, and also on December 1st, 2019, Plaintiff Campbell read the online labeling as well as Defendant's representations regarding the cream's pain relief benefits and hemp extract quality on amazon.com. In making her purchasing decision, Plaintiff Campbell relied on the labeling and representations that she read online. She bought the Unscented Hemp Infused Cream for the purported benefits of the hemp extract it contained and hoped that it would help alleviate her muscle spasms and pain. Plaintiff Campbell did not buy the Unscented Hemp Infused Cream again because she did not believe that it provided any pain relief or other health benefits despite being so expensive. Had Plaintiff Campbell known the Unscented Hemp Infused Cream had an amount of hemp extract less than the amount represented on the product packaging, she would not have purchased it.

13.     Plaintiff Chelsey DiDomenico is a citizen of Tennessee who purchased the Unscented Hemp Infused Cream for $49.99 on June 23rd, 2019 from the Kroger Marketplace located at 507 North Foothills Plaza, Maryville, TN 37801. Prior to purchasing the Unscented Hemp Infused Cream, on June 22nd, 2019 Plaintiff DiDomenico read the online labeling as well as Defendant's representations regarding the cream's pain relief benefits found on Defendant's

website. In making her purchasing decision, Plaintiff DiDomenico relied on the labeling and representations that she read online. She believed the Unscented Hemp Infused Cream could provide cosmetic benefits and relieve her lower back pain. Plaintiff DiDomenico did not purchase the Unscented Hemp Infused Cream again because she thought that she had wasted her money and did not receive any health or cosmetic benefits. Had Plaintiff DiDomenico known the Unscented Hemp Infused Cream had an amount of hemp extract less than the amount represented on the product packaging, she would not have purchased it.

14.     Plaintiff Amy Hucke is a citizen of Florida who purchased the Soothing Scent Hemp Infused Cream for $49.99 on November 13th, 2019, from Lucky's Market located at 9184 Wiles Road in Coral Springs, Florida 33067. Prior to purchasing the Soothing Scent Hemp Infused Cream, on November 13th, 2019, Plaintiff Hucke spoke to a Lucky's Market store employee who recommended it to her for its supposed CBD potency. Plaintiff Hucke purchased the Soothing Scent Hemp Infused Cream for relief from pain in her shoulder, neck area, and lower back. Further, Plaintiff Hucke sought a hemp extract product which could alleviate her husband's Parkinson's disease and PTSD. After finding out that the Soothing Scent Hemp Infused Cream had an amount of hemp extract less than the amount represented on the product packaging, Plaintiff Hucke decided not to buy it again. Had Plaintiff Hucke known the Soothing Scent Hemp Infused Cream had an amount of hemp extract less than the amount represented on the product packaging, she would not have purchased it.

15.     Plaintiff Steven Pfister is a citizen of Illinois who purchased the Soothing Scent Hemp Infused Cream for $49.99, on September 3, 2019, and the Unscented Hemp Infused Cream for $49.99, on September 10, 2019, September 30, 2019, October 10, 2019, October 27, 2019, November 7, 2019, and November 24, 2019. Plaintiff Pfister purchased the Products from the CVS

Pharmacy located at 3900 W Elm St., McHenry, Il 60050. Prior to purchasing the Products, on September 3, 2019 Plaintiff Pfister read their online labeling as well as Defendant's representations regarding the Products' holistic benefits found on Defendant's website. In making his purchasing decision, Plaintiff Pfister relied on the labeling and representations that he read online. He purchased the Products seeking relief from the pain in his aching joints. Originally, Plaintiff Pfister purchased the Soothing Scent Hemp Infused Balm containing 450mg of hemp extract according to the product labeling; however, after not experiencing pain relief, he decided to purchase the Products which Defendant misrepresent as containing 750mg of hemp extract. After still not experiencing the pain relief he desired, Plaintiff Pfister stopped purchasing the Products. Had Plaintiff Pfister known the Products contained an amount of hemp extract less than the amount represented on the product packaging, he would not have purchased them.

16.     Plaintiff Hadel Toma is a citizen of Michigan who purchased the Soothing Scent Hemp Infused Cream twice. He first purchased the product on October 22, 2019 for approximately $30.00 from the BP gas station located at 27030 Gratiot Ave, Roseville, MI 48066. Plaintiff Toma then purchased the product for $32.99 on December 20, 2019 from Better Health Market & Cafe located at 19221 Mack Ave., Detroit, MI 48236. Prior to purchasing the Soothing Scent Hemp Infused Cream, on both October 22, 2019 and December 20, 2019, Plaintiff Toma read the product labeling at the stores. In making his purchasing decisions, Plaintiff Toma relied on the product labeling and the represented amount of hemp extract. Plaintiff Toma purchased the Soothing Scent Hemp Infused Cream seeking relief from inflammation in his joints. After not experiencing the pain relief he desired, Plaintiff Toma did not purchase the Soothing Scent Hemp Infused Cream again. Had Plaintiff Toma known the Soothing Scent Hemp Infused Cream contained an amount

of hemp extract less than the amount represented on the product packaging, he would not have purchased it.

17.     Plaintiff Eric Fishon is a citizen of New York who purchased the Unscented Hemp Infused Cream for $29.99 on August 11, 2019 from iHempEmpire, an online vendor on Amazon. Prior to purchasing the Unscented Hemp Infused Cream, on August 11, 2019, Plaintiff Fishon read the product labeling online and the represented amount of hemp extract. In making his purchasing decision, Plaintiff Fishon relied on online research, Amazon customer reviews of the product, representations on Charlotte's Web's website and product reviews on Charlotte's Web's website. Plaintiff Fishon purchased the Unscented Hemp Infused Cream seeking relief from pain in his shoulder. Based on his research, he thought the product had a sufficiently large enough quantity of hemp extract to alleviate his shoulder pain. However, after not experiencing any pain relief, Plaintiff Fishon did not purchase the Unscented Hemp Infused Cream again. Had Plaintiff Fishon known the Unscented Hemp Infused Cream contained an amount of hemp extract less than the amount represented on the product packaging, he would not have purchased it.

18.     Defendant Charlotte's Web, Inc. is a Delaware corporation with its principal place of business at 1600 Pearl St., Ste. 300, Boulder, CO 80302.

## FACTUAL ALLEGATIONS

19.     At all relevant times, Defendant has marketed its Products in a consistent and uniform manner representing that the Products contain "750mg Hemp Extract." Defendant sells the Products in all 50 states, including the State of Illinois, on its website and in multiple high-profile retail stores such as Walmart, CVS, and others. Defendant also sells its products on Amazon, CVS online, and retail websites other than its own.

20.     However, none of the Products (including those sold in the State of Illinois) conform to the "750mg Hemp Extract" representation. This common misrepresentation permeates throughout all the products and is located on the front of each of the Product's label.

21.     Further, each product contains this "750mg Hemp Extract" representation on the packaging in order to induce buyers to pay a premium and purchase the product over other moisturizing skin creams. As discussed throughout *infra*, none of the Products conform to the "750mg Hemp Extract" representation.

**The Defendant's Product Packaging**

22.     On the front of the product packaging for the Soothing Scent Hemp Infused Cream, it states: "750mg of Hemp Extract."





23.     On the front of the product packaging for the Unscented Hemp Infused Cream, it states: "750mg of Hemp Extract."





24.     On the back of the Products' packaging, Defendant represents that the Unscented Hemp Infused Cream contains "The World's Most Trusted Hemp Extract™."

25.     Despite Defendant's representations, independent testing has revealed that the Products contain an amount of hemp extract significantly less than the amount represented on the product packaging.

**Independent Testing Reveals the Unscented Hemp Infused Cream Contains
Less Hemp Extract Than Advertised On The Label**

26.     While there is no established statutory or regulatory definition of "hemp extract" that is <u>not</u> used for human consumption, certain state laws have defined "hemp extract" that is used for human consumption as follows: "'Hemp extract' means all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers derived from hemp, used or intended for human consumption, for its cannabinoid content, with a delta-9 tetrahydrocannabinol concentration of not more than an amount determined by the department in regulation." N.Y. Public Health Consolidated Laws, Section 3398.

27.     Independent testing of Lot# J8039D2 of Unscented Hemp Infused Cream has revealed that despite the Defendant's representations on the Product packaging that it contains "750mg Hemp Extract," it in reality contains considerably less.

28.     750 mg of Hemp Extract equates to 1.06% of the 71g bottle for the Unscented Hemp Infused Cream, and the testing of all the ingredients included in the definition of "hemp extract" set out in the N.Y. law shows that the amount of Hemp Extract found in the Unscented Hemp Infused Cream is less than that amount.

29.     On November 19, 2019, an outside lab, Botanacor, tested an Unscented Hemp Infused Cream, J8039D2, and found 0.23% total cannabinoids, cannabinoid acids, salts, isomers, and salts of isomers in the product. This equates to approximately 163.30 mg of Hemp Extract.[3] This report is attached hereto as **Exhibit A-1**.

---

[3] Plaintiffs are not suggesting that cannabinoids are the same as hemp extract, but cannabinoids, cannabinoid acids, salts, isomers, and salts of isomers are all component parts of hemp extract. Therefore, the weight of these substances equates to an equivalent amount of hemp extract.

30. On January 3, 2020, an outside lab, Botanacor, tested an Unscented Hemp Infused Cream, J8039D2, and found 0.00% total terpenes, a type of extract or derivative of hemp, in the product. This report is attached hereto as **Exhibit A-2.**

31. On May 28, 2020, an outside lab tested an Unscented Hemp Infused Cream, J8039D2, and found 34.25 ppm total flavonoids, a type of extract or derivative of hemp, in the product. This equates to approximately 0.0034% or 2.43 mg of Hemp Extract.[4]

32. On June 3, 2020, an outside lab tested an Unscented Hemp Infused Cream, J8039D2, and found all 17 essential amino acids to be at a level <0.01% of Hemp Extract.[5]

33. The sum of all extracts, derivatives, cannabinoids, salts, isomers, salts of isomers, and acids found in Lot# J8039D2 of the Unscented Hemp Infused Cream equals a total of approximately 165.73 mg or 0.2334% of Hemp Extract, far less than the Defendant's representation on the product packaging that it contains "750mg Hemp Extract" (which would be equivalent to 1.06% of the Hemp Extract).

| Component | Result (mg) |
|---|---|
| **I.     Extracts & Derivatives** | |
|    A.  Terpenes | 0.00 |
|    B.  Flavonoids | 2.431466 |
| | |
| **II.    Cannabinoids, Salts, Isomers & Salts of Isomers** | |
|    A.  Cannabidiol (CBD) | 163.30 |
|    B.  Delta 9-Tetrahydrocannabinol (Delta 9THC) | 0.00 |
|    C.  Delta 8-Tetrahydrocannabinol (Delta 8THC) | 0.00 |
|    D.  Cannabinol (CBN) | 0.00 |
|    E.  Cannabigerol (CBG) | 0.00 |
|    F.  Tetrahydrocannabivarin (THCV) | 0.00 |
|    G.  Cannabidivarin (CBDV) | 0.00 |
|    H.  Cannabichromene (CBC) | 0.00 |

---

[4] Plaintiffs shall provide Defendant with a sealed report.
[5] Plaintiffs shall provide Defendant with a sealed report.

|  |  |
|---|---|
| **III.**     **Acids** |  |
| A. Delta 9-Tetrahydrocannabinolic Acid (THCA-A) | 0.00 |
| B. Cannabidiolic Acid (CBDA) | 0.00 |
| C. Cannabinolic Acid (CBNA) | 0.00 |
| D. Cannabigerolic Acid (CBGA) | 0.00 |
| E. Tetrahydrocannabivarinic Acid (THCVA) | 0.00 |
| F. Cannabidivarinic Acid (CBDVA) | 0.00 |
| G. Cannabichromenic Acid (CBCA) | 0.00 |
| H. Amino Acids | Negligible |
|  |  |
| **Totals** |  |
| **I.  Extracts & Derivatives** | 2.431466 |
| **II. Cannabinoids, Salts, Isomers & Salts of Isomers** | 163.30 |
| **III. Acids** | 0.00 |
|  |  |
| **Total Hemp Extract** | 165.73 mg |

34.     Independent testing of another lot of the same product -- Lot# K8016D4 of Unscented Hemp Infused Cream – also revealed that, despite the Defendant's representations on the Product packaging that it contains "750mg Hemp Extract," it in reality contains considerably less.

35.     On November 19, 2019, an outside lab, Botanacor, tested an Unscented Hemp Infused Cream, K8016D4, and found 0.30% total cannabinoids, cannabinoid acids, salts, isomers, and salts of isomers in the product. This equates to approximately 213 mg of Hemp Extract. This report is attached hereto as **Exhibit B-1.**

36.     On January 3, 2020, an outside lab, Botanacor, tested an Unscented Hemp Infused Cream, K8016D4, and found 0.057% total terpenes, a type of extract or derivative of hemp, in the

product. This equates to approximately 40.47 mg of Hemp Extract. This report is attached hereto as **Exhibit B-2.**

37.     On May 28, 2020, an outside lab tested an Unscented Hemp Infused Cream, K8016D4, and found 31.829 ppm total flavonoids, a type of extract or derivative of hemp, in the product. This equates to approximately 0.0032% or 2.26 mg of Hemp Extract.[6]

38.     On June 3, 2020, an outside lab tested an Unscented Hemp Infused Cream, K8016D4, and found all 17 essential amino acids to be at a level <0.01% of Hemp Extract.[7]

39.     The sum of all extracts, derivatives, cannabinoids, salts, isomers, salts of isomers, and acids found in Lot# K8016D4 of the Unscented Hemp Infused Cream equals a total of approximately 255.73 mg or 0.3602% of Hemp Extract, despite the Defendant's representations on the Product packaging that it contains "750mg Hemp Extract," equivalent to 1.06%.

| Component | Result (mg) |
|---|---|
| **I.     Extracts & Derivatives** | |
| A.  Terpenes | 40.47 |
| B.  Flavonoids | 2.259859 |
| | |
| **II.    Cannabinoids, Salts, Isomers & Salts of Isomers** | |
| A.  Cannabidiol (CBD) | 213.00 |
| B.  Delta 9-Tetrahydrocannabinol (Delta 9THC) | 0.00 |
| C.  Delta 8-Tetrahydrocannabinol (Delta 8THC) | 0.00 |
| D.  Cannabinol (CBN) | 0.00 |
| E.  Cannabigerol (CBG) | 0.00 |
| F.  Tetrahydrocannabivarin (THCV) | 0.00 |
| G.  Cannabidivarin (CBDV) | 0.00 |
| H.  Cannabichromene (CBC) | 0.00 |
| | |
| **III.   Acids** | |
| A.  Delta 9-Tetrahydrocannabinolic Acid (THCA-A) | 0.00 |

---

[6] Plaintiffs shall provide Defendant with a sealed report.
[7] Plaintiffs shall provide Defendant with a sealed report.

| | |
|---|---|
| B. Cannabidiolic Acid (CBDA) | 0.00 |
| C. Cannabinolic Acid (CBNA) | 0.00 |
| D. Cannabigerolic Acid (CBGA) | 0.00 |
| E. Tetrahydrocannabivarinic Acid (THCVA) | 0.00 |
| F. Cannabidivarinic Acid (CBDVA) | 0.00 |
| G. Cannabichromenic Acid (CBCA) | 0.00 |
| H. Amino Acids | Negligible |
| | |
| **Totals** | |
| **I. Extracts & Derivatives** | 42.729859 |
| **II. Cannabinoids, Salts, Isomers & Salts of Isomers** | 213.00 |
| **III. Acids** | 0.00 |
| | |
| **Total Hemp Extract** | 255.73 mg |

**Independent Testing Reveals the Soothing Scent Hemp Infused Cream Contains Less Hemp Extract Than Advertised On The Label**

40. Similarly, independent testing of Lot# K8015D3 of Soothing Scent Hemp Infused Cream has revealed that, despite the Defendant's representations on the Product Packaging that it contains "750mg Hemp Extract," it in reality contains considerably less.

41. 750 mg of Hemp Extract equates to 1.06% of the 71g bottle for the Soothing Scent Hemp Infused Cream, and the testing of all the ingredients included in the definition of "hemp extract" set out in the N.Y. law shows that the amount of Hemp Extract found in the Soothing Scent Hemp Infused Cream is less than that amount.

42. On November 19, 2019, an outside lab, Botanacor, tested a Soothing Scent Hemp Infused Cream, K8015D3, and found 0.28% total cannabinoids, cannabinoid acids, salts, isomers, and salts of isomers in the product. This equates to approximately 198.80 mg of Hemp Extract. This report is attached hereto as **Exhibit C-1.**

17

43.     On January 3, 2020, an outside lab, Botanacor, tested a Soothing Scent Hemp Infused Cream, K8015D3, and found 0.061% total terpenes, a type of extract or derivative of hemp, in the product. This equates to approximately 43.31 mg of Hemp Extract. This report is attached hereto as **Exhibit C-2.**

44.     On May 28, 2020, an outside lab tested a Soothing Scent Hemp Infused Cream, K8015D3, and found 30.61 ppm total flavonoids, a type of extract or derivative of hemp, in the product. This equates to approximately 0.0031% or 2.17 mg of Hemp Extract.[8]

45.     On June 1, 2020, an outside lab tested a Soothing Scent Hemp Infused Cream, K8015D3, and found all 17 essential amino acids to be at a level <0.01% of Hemp Extract.[9]

46.     The sum of all extracts, derivatives, cannabinoids, salts, isomers, salts of isomers, and acids found in Lot# K8015D3 of the Soothing Scent Hemp Infused Cream equals a total of approximately 244.28 mg or 0.3441% of Hemp Extract despite the Product's representations it contains "750mg Hemp Extract," an amount equivalent to 1.06% of the total Product package contents of 71 grams.

| Component | Result (mg) |
| --- | --- |
| **I.    Extracts & Derivatives** | |
| A.  Terpenes | 43.31 |
| B.  Flavonoids | 2.17331 |
| | |
| **II.   Cannabinoids, Salts, Isomers & Salts of Isomers** | |
| A.  Cannabidiol (CBD) | 198.80 |
| B.  Delta 9-Tetrahydrocannabinol (Delta 9THC) | 0.00 |
| C.  Delta 8-Tetrahydrocannabinol (Delta 8THC) | 0.00 |
| D.  Cannabinol (CBN) | 0.00 |
| E.  Cannabigerol (CBG) | 0.00 |
| F.  Tetrahydrocannabivarin (THCV) | 0.00 |

[8] Plaintiffs shall provide Defendant with a sealed report.
[9] Plaintiffs shall provide Defendant with a sealed report.

| | |
|---|---|
| G. Cannabidivarin (CBDV) | 0.00 |
| H. Cannabichromene (CBC) | 0.00 |
| | |
| **III. Acids** | |
| A. Delta 9-Tetrahydrocannabinolic Acid (THCA-A) | 0.00 |
| B. Cannabidiolic Acid (CBDA) | 0.00 |
| C. Cannabinolic Acid (CBNA) | 0.00 |
| D. Cannabigerolic Acid (CBGA) | 0.00 |
| E. Tetrahydrocannabivarinic Acid (THCVA) | 0.00 |
| F. Cannabidivarinic Acid (CBDVA) | 0.00 |
| G. Cannabichromenic Acid (CBCA) | 0.00 |
| H. Amino Acids | Negligible |
| | |
| **Totals** | |
| **I. Extracts & Derivatives** | 45.48331 |
| | |
| **II. Cannabinoids, Salts, Isomers & Salts of Isomers** | 198.80 |
| | |
| **III. Acids** | 0.00 |
| | |
| **Total Hemp Extract** | 244.28 mg |

47.　Independent testing of a second lot of the same Product -- Lot# K8016D3 of Soothing Scent Hemp Infused Cream -- revealed that, despite the Defendant's representations on the Product Packaging that it contains "750mg Hemp Extract," it in reality contains considerably less.

48.　On November 19, 2019, an outside lab, Botanacor, tested a Soothing Scent Hemp Infused Cream, K8016D3, and found 0.30% total cannabinoids, cannabinoid acids, salts, isomers, and salts of isomers in the product. This equates to approximately 213 mg of Hemp Extract. This report is attached hereto as **Exhibit D-1.**

49.　On January 3, 2020, an outside lab, Botanacor, tested a Soothing Scent Hemp Infused Cream, K8016D3, and found 0.058% total terpenes, a type of extract or derivative of hemp,

in the product. This equates to approximately 41.18 mg of Hemp Extract. This report is attached hereto as **Exhibit D-2.**

50.    On May 28, 2020, an outside lab tested a Soothing Scent Hemp Infused Cream, K8016D3, and found 32.314 ppm total flavonoids, a type of extract or derivative of hemp, in the product. This equates to approximately 0.0032% or 2.29 mg of Hemp Extract.[10]

51.    On June 3, 2020, an outside lab tested a Soothing Scent Hemp Infused Cream, K8016D3, and found all 17 essential amino acids to be at a level <0.01% of Hemp Extract.[11]

52.    The sum of all extracts, derivatives, cannabinoids, salts, isomers, salts of isomers, and acids found in Lot# K8016D3 of the Soothing Scent Hemp Infused Cream equals a total of approximately 256.47 mg or 0.3612% of Hemp Extract despite the Defendant's representations on the Product Packaging that it contains "750mg Hemp Extract" (an amount equivalent to 1.06% of the 71 grams in each unit of the Product).

| Component | Result (mg) |
|---|---|
| **I.        Extracts & Derivatives** | |
| A.  Terpenes | 41.18 |
| B.  Flavonoids | 2.294294 |
| | |
| **II.       Cannabinoids, Salts, Isomers & Salts of Isomers** | |
| A.  Cannabidiol (CBD) | 213.00 |
| B.  Delta 9-Tetrahydrocannabinol (Delta 9THC) | 0.00 |
| C.  Delta 8-Tetrahydrocannabinol (Delta 8THC) | 0.00 |
| D.  Cannabinol (CBN) | 0.00 |
| E.  Cannabigerol (CBG) | 0.00 |
| F.  Tetrahydrocannabivarin (THCV) | 0.00 |
| G.  Cannabidivarin (CBDV) | 0.00 |
| H.  Cannabichromene (CBC) | 0.00 |
| **III.      Acids** | |

[10] Plaintiffs shall provide Defendant with a sealed report.
[11] Plaintiffs shall provide Defendant with a sealed report.

| | |
|---|---|
| A. Delta 9-Tetrahydrocannabinolic Acid (THCA-A) | 0.00 |
| B. Cannabidiolic Acid (CBDA) | 0.00 |
| C. Cannabinolic Acid (CBNA) | 0.00 |
| D. Cannabigerolic Acid (CBGA) | 0.00 |
| E. Tetrahydrocannabivarinic Acid (THCVA) | 0.00 |
| F. Cannabidivarinic Acid (CBDVA) | 0.00 |
| G. Cannabichromenic Acid (CBCA) | 0.00 |
| H. Amino Acids | Negligible |
| | |
| **Totals** | |
| **I. Extracts & Derivatives** | 43.474294 |
| **II. Cannabinoids, Salts, Isomers & Salts of Isomers** | 213.00 |
| **III. Acids** | 0.00 |
| | |
| **Total Hemp Extract** | 256.47 mg |

53. What's more, independent testing of a third lot of the same Product -- Lot# D9037D2 of Soothing Scent Hemp Infused Cream -- confirmed that, despite the Defendant's representations on the Product Packaging that it contains "750mg Hemp Extract," it in reality contains considerably less.

54. On November 19, 2019, an outside lab, Botanacor, tested a Soothing Scent Hemp Infused Cream, D9037D2, and found 0.50% total cannabinoids, cannabinoid acids, salts, isomers, and salts of isomers in the product. This equates to approximately 355 mg of Hemp Extract. This report is attached hereto as **Exhibit E-1.**

55. On January 3, 2020, an outside lab, Botanacor, tested a Soothing Scent Hemp Infused Cream, D9037D2, and found 0.013% total terpenes, a type of extract or derivative of hemp, in the product. This equates to approximately 9.23 mg of Hemp Extract. This report is attached hereto as **Exhibit E-2.**

56.     On May 28, 2020, an outside lab tested a Soothing Scent Hemp Infused Cream, D9037D2, and found 27.400 ppm total flavonoids, a type of extract or derivative of hemp, in the product. This equates to approximately 0.0027% or 1.95 mg of Hemp Extract.[12]

57.     On June 3, 2020, an outside lab tested a Soothing Scent Hemp Infused Cream, D9037D2, and found all 17 essential amino acids to be at a level <0.01% of Hemp Extract.[13]

58.     The sum of all extracts, derivatives, cannabinoids, salts, isomers, salts of isomers, and acids found in Lot# D9037D2 of the Soothing Scent Hemp Infused Cream equals a total of approximately 366.18 mg or 0.5157% of Hemp Extract despite the Product's representations it contains "750mg Hemp Extract," equivalent to 1.06% of the total product weight.

| Component | Result (mg) |
|---|---|
| **I.     Extracts & Derivatives** | |
| A.  Terpenes | 9.23 |
| B.  Flavonoids | 1.9454 |
| | |
| **II.    Cannabinoids, Salts, Isomers & Salts of Isomers** | |
| A.  Cannabidiol (CBD) | 355.00 |
| B.  Delta 9-Tetrahydrocannabinol (Delta 9THC) | 0.00 |
| C.  Delta 8-Tetrahydrocannabinol (Delta 8THC) | 0.00 |
| D.  Cannabinol (CBN) | 0.00 |
| E.  Cannabigerol (CBG) | 0.00 |
| F.  Tetrahydrocannabivarin (THCV) | 0.00 |
| G.  Cannabidivarin (CBDV) | 0.00 |
| H.  Cannabichromene (CBC) | 0.00 |
| | |
| **III.   Acids** | |
| A.  Delta 9-Tetrahydrocannabinolic Acid (THCA-A) | 0.00 |
| B.  Cannabidiolic Acid (CBDA) | 0.00 |
| C.  Cannabinolic Acid (CBNA) | 0.00 |
| D.  Cannabigerolic Acid (CBGA) | 0.00 |

---

[12] Plaintiffs shall provide Defendant with a sealed report.
[13] Plaintiffs shall provide Defendant with a sealed report.

| | |
|---|---|
| E. Tetrahydrocannabivarinic Acid (THCVA) | 0.00 |
| F. Cannabidivarinic Acid (CBDVA) | 0.00 |
| G. Cannabichromenic Acid (CBCA) | 0.00 |
| H. Amino Acids | Negligible |
| | |
| **Totals** | |
| **I. Extracts & Derivatives** | 11.1754 |
| **II. Cannabinoids, Salts, Isomers & Salts of Isomers** | 355.00 |
| **III. Acids** | 0.00 |
| | |
| **Total Hemp Extract** | 366.18 mg |

### Defendant's Misrepresentations and Omissions are Material to Consumers

59.     Consumers seek out Defendant's Hemp Extract Products specifically for the amount of hemp extract purportedly contained therein, correlating the amount of hemp extract purportedly contained therein with the amount of and concentration of CBD (i.e. more hemp extract equals more CBD in the minds of consumers like Plaintiffs here), and for the purported benefits Cannabidiol, or CBD provides.  Thus, more hemp extract means more benefits and more effectiveness, in the minds of reasonable consumers.  Consumers purchase such products due to their purported benefits such as ability to "soothe" sensitive skin with CBD and hemp extract ingredients rather than conventional moisturizing skin cream.

60.     Defendant's Hemp Infused Creams, which purport to contain 750mg of hemp extract, are sold for $49.99 for 2.5 fl. oz. Consumers pay a premium for these products over other skin creams and the amount of hemp extract and CBD ingredients are the primary reason for that premium.

61.     Defendant thus misleads consumers into thinking they purchased a premium product which will provide greater health benefits because of the represented amount or quantities

of hemp extract ingredients; however, independent testing has revealed that the amount of hemp extract in the Hemp Infused Creams is not what is advertised on the packaging of the Products and in reality is much less.

**Plaintiffs' Experiences**

62.    Plaintiff Shaida Benson is a citizen of South Carolina who purchased the Unscented Hemp Infused Cream twice, each time for approximately $50.00. Plaintiff Benson first purchased the Unscented Hemp Infused Cream on June 5th, 2018 from 14 Carrot Whole Foods, at 5300 Sunset Blvd, Lexington, SC 29072. Her second purchase was on September 14th, 2019 from Earth Fare, at 3312-B Divine St, Columbia, SC 29205.  Prior to purchasing the Unscented Hemp Infused Cream, Plaintiff Benson viewed a television commercial advertising the pain relief benefits of Charlotte's Web products on May 27th, 2018. Furthermore, Plaintiff Benson read the labeling of the Unscented Hemp Infused Cream before making her June 5th, 2018 purchase at 14 Carrot Whole Foods. In making her purchasing decision, Plaintiff Benson relied on the television commercial and product labeling. She believed that the Unscented Hemp Infused Cream contained the represented amount or quantities of the hemp extract ingredient and as such would alleviate the pain she suffers from in her hands and feet as a result of her neuropathy. She stopped purchasing the product after not experiencing any pain relief or health benefits. Had Plaintiff Benson known the Unscented Hemp Infused Cream had an amount of hemp extract less than the amount represented on the product packaging, she would not have purchased it.

63.    Plaintiff Caitlin Campbell is a citizen of Oregon who purchased two bottles of the Unscented Hemp Infused Cream for a total of $59.98 on December 1st, 2019 from Amazon. Prior to purchasing the Unscented Hemp Infused Cream, and also on December 1st, 2019, Plaintiff Campbell read the online labeling as well as Defendant's representations regarding the cream's

pain relief benefits and hemp extract quality on amazon.com. In making her purchasing decision, Plaintiff Campbell relied on the labeling and representations that she read online. She bought the Unscented Hemp Infused Cream for the purported benefits of the hemp extract it contained and hoped that it would help alleviate her muscle spasms and pain. Plaintiff Campbell did not buy the Unscented Hemp Infused Cream again because she did not believe that it provided any pain relief or other health benefits despite being so expensive. Had Plaintiff Campbell known the Unscented Hemp Infused Cream had an amount of hemp extract less than the amount represented on the product packaging, she would not have purchased it.

64.     Plaintiff Chelsey DiDomenico is a citizen of Tennessee who purchased the Unscented Hemp Infused Cream for $49.99 on June 23rd, 2019 from the Kroger Marketplace located at 507 North Foothills Plaza, Maryville, TN 37801. Prior to purchasing the Unscented Hemp Infused Cream, on June 22nd, 2019 Plaintiff DiDomenico read the online labeling as well as Defendant's representations regarding the cream's pain relief benefits found on Defendant's website. In making her purchasing decision, Plaintiff DiDomenico relied on the labeling and representations that she read online. She believed the Unscented Hemp Infused Cream could provide cosmetic benefits and relieve her lower back pain. Plaintiff DiDomenico did not purchase the Unscented Hemp Infused Cream again because she thought that she had wasted her money and did not receive any health or cosmetic benefits. Had Plaintiff DiDomenico known the Unscented Hemp Infused Cream had an amount of hemp extract less than the amount represented on the product packaging, she would not have purchased it.

65.     Plaintiff Amy Hucke is a citizen of Florida who purchased the Soothing Scent Hemp Infused Cream for $49.99 on November 13th, 2019, from Lucky's Market located at 9184 Wiles Road in Coral Springs, Florida 33067. Prior to purchasing the Soothing Scent Hemp Infused

Cream, on November 13th, 2019, Plaintiff Hucke spoke to a Lucky's Market store employee who recommended it to her for its supposed CBD potency. Plaintiff Hucke purchased the Soothing Scent Hemp Infused Cream for relief from pain in her shoulder, neck area, and lower back. Further, Plaintiff Hucke sought a hemp extract product which could alleviate her husband's Parkinson's disease and PTSD. After finding out that the Soothing Scent Hemp Infused Cream had an amount of hemp extract less than the amount represented on the product packaging, Plaintiff Hucke decided not to buy it again. Had Plaintiff Hucke known the Soothing Scent Hemp Infused Cream had an amount of hemp extract less than the amount represented on the product packaging, she would not have purchased it.

66.     Plaintiff Steven Pfister is a citizen of Illinois who purchased the Soothing Scent Hemp Infused Cream for $49.99, on September 3, 2019, and the Unscented Hemp Infused Cream for $49.99, on September 10, 2019, September 30, 2019, October 10, 2019, October 27, 2019, November 7, 2019, and November 24, 2019. Plaintiff Pfister purchased the Products from the CVS Pharmacy located at 3900 W Elm St., McHenry, Il 60050. Prior to purchasing the Products, on September 3, 2019 Plaintiff Pfister read their online labeling as well as Defendant's representations regarding the Products' holistic benefits found on Defendant's website. In making his purchasing decision, Plaintiff Pfister relied on the labeling and representations that he read online. He purchased the Products seeking relief from the pain in his aching joints. Originally, Plaintiff Pfister purchased the Soothing Scent Hemp Infused Balm containing 450mg of hemp extract according to the product labeling; however, after not experiencing pain relief, he decided to purchase the Products which Defendant misrepresent as containing 750mg of hemp extract. After still not experiencing the pain relief he desired, Plaintiff Pfister stopped purchasing the Products. Had

Plaintiff Pfister known the Products contained an amount of hemp extract less than the amount represented on the product packaging, he would not have purchased them.

67.     Plaintiff Hadel Toma is a citizen of Michigan who purchased the Soothing Scent Hemp Infused Cream twice. He first purchased the product on October 22, 2019 for approximately $30.00 from the BP gas station located at 27030 Gratiot Ave, Roseville, MI 48066. Plaintiff Toma then purchased the product for $32.99 on December 20, 2019 from Better Health Market & Cafe located at 19221 Mack Ave., Detroit, MI 48236. Prior to purchasing the Soothing Scent Hemp Infused Cream, on both October 22, 2019 and December 20, 2019, Plaintiff Toma read the product labeling at the stores. In making his purchasing decisions, Plaintiff Toma relied on the product labeling and the represented amount of hemp extract. Plaintiff Toma purchased the Soothing Scent Hemp Infused Cream seeking relief from inflammation in his joints. After not experiencing the pain relief he desired, Plaintiff Toma did not purchase the Soothing Scent Hemp Infused Cream again. Had Plaintiff Toma known the Soothing Scent Hemp Infused Cream contained an amount of hemp extract less than the amount represented on the product packaging, he would not have purchased it.

68.     Plaintiff Eric Fishon is a citizen of New York who purchased the Unscented Hemp Infused Cream for $29.99 on August 11, 2019 from iHempEmpire, an online vendor on amazon.com. Prior to purchasing the Unscented Hemp Infused Cream, on August 11, 2019, Plaintiff Fishon read the product labeling online and the represented amount of hemp extract. In making his purchasing decision, Plaintiff Fishon relied on online research, amazon customer reviews of the product, representations on Charlotte's Web's website and product reviews on Charlotte's Web's website. Plaintiff Fishon purchased the Unscented Hemp Infused Cream seeking relief from pain in his shoulder. Based on his research, he thought the product had a

sufficiently large enough quantity of hemp extract to alleviate his shoulder pain. However, after not experiencing any pain relief, Plaintiff Fishon did not purchase the Unscented Hemp Infused Cream again. Had Plaintiff Fishon known the Unscented Hemp Infused Cream contained an amount of hemp extract less than the amount represented on the product packaging, he would not have purchased it.

## CLASS ACTION ALLEGATIONS

69.     Plaintiffs bring this action individually and as representatives of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Class:

**National Class: All persons in the United States who, during the maximum period permitted by the law, purchased the Products primarily for personal, family or household purposes, and not for resale.**

70.     Plaintiffs brings this action on behalf themselves and the following Multi-State Class:

**Consumer Fraud Multi-State Class:  All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, Rhode Island, Washington and Wisconsin who, during the maximum period permitted by the law, purchased the Products primarily for personal, family or household purposes, and not for resale. (the "Consumer Fraud Multi-State Class").[14]**

71.     Plaintiff Amy Hucke brings this action on behalf of themselves and the members of the following State Class:

---

[14] The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq*., prohibits both unfair and deceptive business acts and practices on the part of entities conducting business with consumers within the State of Illinois.  The States in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case as alleged herein: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201 *et seq*.); Massachusetts (Mass. Gen. Laws Ch. 93A *et seq*.); Michigan (Mich. Comp. Laws § 445.903 *et seq*.); Minnesota (Minn. Stat. § 325F.67, *et seq*.); Missouri (Mo. Rev. Stat. § 407.010 *et seq*.); New Hampshire (N.H. Rev. Stat. § 358-A:1); New Jersey (N.J. Stat. § 56:9-1, *et seq*.); New York (N.Y. Gen. Bus. Law § 349, *et seq*.); Rhode Island (R.I. Gen. L. Ch. 6-13.1); Washington (Wash. Rev. Code § 19.86010, *et seq*.) and Wisconsin (WIS.  STAT. § 100.18, *et seq*.).

**Florida State Sub-Class: All persons in Florida who, during the maximum period permitted by the law, purchased the Products primarily for personal, family or household purposes, and not for resale.**

72. Plaintiff Steven Pfister brings this action on behalf of himself and the members of the following State Class:

**Illinois State Sub-Class: All persons in Illinois who, during the maximum period permitted by the law, purchased the Products primarily for personal, family or household purposes, and not for resale.**

73. Plaintiff Caitlin Campbell brings this action on behalf of herself and the members of the following State Class:

**Oregon State Sub-Class: All persons in Oregon who, during the maximum period permitted by the law, purchased the Products primarily for personal, family or household purposes, and not for resale.**

74. Plaintiff Shaida Benson brings this action on behalf of herself and the members of the following State Class:

**South Carolina State Sub-Class: All persons in South Carolina who, during the maximum period permitted by the law, purchased the Products primarily for personal, family or household purposes, and not for resale.**

75. Plaintiff, Chelsey DiDomenico brings this action on behalf of herself and the members of the following State Class:

**Tennessee State Sub-Class: All persons in Tennessee who, during the maximum period permitted by the law, purchased the Products primarily for personal, family or household purposes, and not for resale.**

76. Plaintiff, Hadel Toma brings this action on behalf of himself and the members of the following State Class:

**Michigan State Sub-Class: All persons in Michigan who, during the maximum period permitted by the law, purchased the Products primarily for personal, family or household purposes, and not for resale.**

77. Plaintiff, Eric Fishon brings this action on behalf of himself and the members of the

following State Class:

**New York Sub-Class: All persons in New York who, during the maximum period permitted by the law, purchased the Products primarily for personal, family or household purposes, and not for resale.**

78.     Specifically excluded from these definitions are (1) Defendant, any entity in which

Defendant has a controlling interest, and its legal representatives, officers, directors, employees,

assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's

staff or immediate family; (3) Class Counsel; (4) Purchasers of the Products directly from the

Defendant's website.

79.     As used herein, "Class Members" shall mean and refer to the members of the

Nationwide Class and all Sub-Classes, including Plaintiffs.

80.     Plaintiffs seek only damages and equitable relief on behalf of themselves and the

Class Members. Plaintiffs disclaim any intent or right to seek any recovery in this action for

personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class

Members.

81.     Numerosity: Although the exact number of Class Members is uncertain at this time

and can only be ascertained through discovery, the number is great enough such that joinder is

impracticable.  The disposition of the claims of these Class Members in a single action will provide

substantial benefits to all parties and to the Court.

82.     Typicality: The claims of the representative Plaintiffs are typical in that Plaintiffs,

like all Class Members, purchased the Products that were manufactured and distributed by

Defendant.  Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in

that, *inter alia*, they have incurred or will continue to incur damage as a result of overpaying for a

product that contained a significantly lesser amount of hemp extract than advertised. Furthermore, the factual basis of Defendant's misconduct is common to all Class Members because Defendant has engaged in a systematic fraudulent behavior, that was deliberate, includes negligent misconduct, and results in the same injury to all Class Members.

83. <u>Commonality</u>: Plaintiffs have numerous questions of law and fact common to themselves and Class Members that predominate over any individualized questions. These common legal and factual issues include:

    a. Whether the Products contain an amount of hemp extract less than the amount represented on the product packaging;

    b. Whether Defendant's "750mg hemp extract" representation is false and/or misleading;

    c. Whether Defendant expressly warranted that the Products would conform to its "750mg hemp extract" representation;

    d. Whether Defendant impliedly warranted that the Products would conform to its "750mg hemp extract" representation;

    e. Whether Defendant breached its warranties by making the representations above;

    f. Whether Defendant was unjustly enriched by making the representations and omissions above;

    g. Whether Defendant's actions as described above violate the various state consumer protection laws as alleged herein;

    h. Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, pay damages, and pay treble damages as a result of the above described practices.

84. <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

85.    <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

86.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

**COUNT 1**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of The National Class)**

87.    Plaintiffs bring this count on behalf of themselves and the National Class and repeat and re-allege all previous paragraphs, as if fully included herein.

88.    UCC § 2-313(1) states that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "[a]ny

description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."

89.  UCC § 2-313 has been adopted in:

    a) Florida, Fla. Stat. Ann. § 672.313.
    b) Illinois, 810 ILCS 5/2-313.
    c) South Carolina, S.C. Code §§ 36-2-313 & 36-2A-210.
    d) Oregon, Or. Rev. Stat. § 72.3130 & 72A.2100.
    e) Tennessee, Tenn. Code §§ 47-2-313 & 47-2A-210.
    f) New York, N.Y. U.C.C. Law § 2-313.

90.  Defendant sold and Plaintiffs purchased the Products.

91.  Defendant represented in its marketing, advertising, and promotion of the Products that they contained "750mg Hemp Extract."

92.  Defendant made these representations to specifically induce Plaintiffs and Class Members to purchase the Products.

93.  Defendant's representations that the Products contained "750mg Hemp Extract" became part of the basis of the bargain between Defendant and Plaintiffs (and Class Members) and constituted an express warranty.

94.  The Products contain significantly less than "750mg Hemp Extract."

95.  Defendant breached the express warranty because the Products failed to conform to Defendant's representations that the Products contained "750mg Hemp Extract."

96.  Defendant's breach is material because it substantially diminishes the value of the Products compared to the value that Defendant represented.

97.  As a direct and proximate result of Defendant's breaches of these express warranties, Plaintiffs and members of the Class have been damaged because they did not receive the products as specifically warranted by Defendant. Plaintiffs also paid a premium for Defendant's Products that did not conform to Defendant's express warranties.

98.    Plaintiff and the Classes have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.

99.    Accordingly, Plaintiffs are entitled to injunctive relief, attorneys' fees and costs, and any other relief that the Court deems just and equitable.

100.    Plaintiffs, on behalf of themselves and all similarly situated Class members, demand judgment against Defendant for compensatory damages, pre- and post-judgment interest, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

101.    UCC § 2-607(3)(a) states that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy".

102.    UCC § 2-607 has been adopted in:

a. Florida, Fla. Stat. Ann. § 672.607.
b. Illinois, 810 Ill. Comp. Stat. § 5/2-607(3)(a).
c. South Carolina, S.C. Code § 36-2-607.
d. Oregon, Or. Rev. Stat. § 72A.5160(3)(a).
e. Tennessee, Tenn. Code Ann. § 47-2-607.
f. New York, N.Y. U.C.C. Law § 2-607.

103.    However, Plaintiffs were not required to notify Defendant of its breaches of warranty because: (i) the goods were sold for human ingestion; and (ii) Defendant had actual knowledge of the defect of the particular Products.

104.    Despite not being required to do so, Plaintiffs notified Defendant of its breaches of warranty by mailing two Notice Letters addressed to Deanie Elsner, Chief Executive Officer, and Zach Detra, Registered Agent, on May 7, 2020.[15]

---

[15] A copy of the May 7, 2020 Notice is attached as Exhibit F.

105.    The Notice Letters delivered on May 12, 2020, 30 days before the filing of this Amended Complaint.

## COUNT 2
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of The National Class)

106.    Plaintiffs bring this count on behalf of themselves and the National Class and repeat and re-allege all previous paragraphs, as if fully included herein.

107.    UCC § 2-314 states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

108.    UCC § 2-314 has been adopted in:

    a) Florida, Fla. Stat. Ann. § 672.314.
    b) Illinois, 810 ILCS 5/2-314.
    c) South Carolina, S.C. Code §§ 36-2-314 & 36-2A-212.
    d) Oregon, Or. Rev. Stat. § 72.3140 & 72A.2120.
    e) Tennessee, Tenn. Code §§ 47-2-314 & 47-2A-212.
    f) New York, N.Y. U.C.C. Law § 2-314.

109.    As set forth above, Plaintiffs have standing to pursue this claim as they have suffered injury in fact and have lost money or property as a result of Defendant's actions.

110.    Defendant is a "merchant" within the meaning of UCC § 2-314 because it deals in the sale of the Products and holds itself out as "having knowledge or skill peculiar to" hemp extract skin creams as well as the ingredients being advertised as containing "750mg Hemp Extract."

111.    Defendant has misled consumers into believing the Products were "750mg Hemp Extract" when in fact the Products contain far less than 750 mg Hemp Extract. Defendant took advantage of Plaintiffs' and the Classes' trust and confidence in its Charlotte's Web brand, and deceptively included undesired ingredients represented to be absent within its Products and did not include the represented amount of the hemp extract in the Products.

112.    To be merchantable, a good must "pass without objection in the trade under the contract description," be "fit for the ordinary purposes for which such goods are used," be "adequately contained, packaged, and labeled as the agreement may require," and "conform to the promises or affirmations of fact made on the container or label if any." UCC § 2-314.

113.    The Products are not fit for their intended use because they do not confer the effects of hemp extract in the quantity represented on the label.

114.    Defendant breached the implied warranty of merchantability because the Products do not conform to the ingredient specifications on their labels and packaging and are not fit for their intended use.

115.    Defendant's breach is material because it substantially diminishes the value of the Products compared to the value that Defendant represented.

116.    Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiffs and the Classes, not distributors who sold the Products. Moreover, Defendant exercises substantial control over which outlets can carry and sell the Products, which are the same places that Plaintiffs purchased them. In addition, Defendant's warranties provided on the labels of the Products are in no way designed to apply to the distributors that purchase the Products in bulk and then sell them on an individual basis to each consumer. Individual consumers are the ones who ultimately review the labels, which Defendant knows, prior to making any purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumer who purchases the Products.

117.    Plaintiffs and the Classes sustained damages as a direct and proximate result of Defendant's breaches in that they paid a premium for the Products that they would not have otherwise paid. Plaintiffs and the Classes also did not receive the value of the Product they paid

for—the Products are worthless or worth far less than Defendant represents due to its misbranding and mislabeling of the Products' hemp extract ingredients.

118.    Plaintiff and the Classes have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.

119.    Accordingly, Plaintiffs are entitled to injunctive relief, attorneys' fees and costs, and any other relief that the Court deems just and equitable.

120.    Plaintiffs, on behalf of themselves and all similarly situated Class members, demand judgment against Defendant for compensatory damages, pre- and post-judgment interest, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

121.    Plaintiffs were not required to notify Defendant of its breaches of warranty because: (i) the goods were sold for human ingestion; and (ii) Defendant had actual knowledge of the defect of the particular product.

122.    Despite not being required to do so, Plaintiffs notified Defendant of its breaches of warranty by mailing two Notice Letters addressed to Deanie Elsner, Chief Executive Officer, and Zach Detra, Registered Agent, on May 7, 2020.

123.    The Notice Letters delivered on May 12, 2020, 30 days before the filing of this Amended Complaint.

### COUNT 3
### UNJUST ENRICHMENT
### (On Behalf of The National Class and in the Alternative to Counts 1-2)

124.    Plaintiffs bring this count, in the alternative to Counts 1 and 2, on behalf of themselves and the National Class and repeat and re-allege all previous paragraphs, as if fully included herein.

125.    Plaintiffs conferred benefits on Defendant by purchasing the Products at a premium price.

126.    Defendant has knowledge of such benefits.

127.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of the Products. Retention of those moneys under these circumstances is unjust and inequitable because (a) Defendant falsely and misleadingly represented that the Products contain "750mg Hemp Extract;" (b) Plaintiffs paid a price premium for the Products based on Defendant's false and misleading statements, and; (c) the Products did not have the characteristics and benefits promised because they contained far less than 750 mg of Hemp Extract.

128.    This has resulted in injuries to Plaintiffs and members of the Class because they would not have purchased (or paid a price premium) for the Products had they known of the true composition of Defendant's Product.

129.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

### COUNT 4
### VIOLATION OF THE STATE CONSUMER FRAUD ACTS
### (On Behalf of the Consumer Fraud Multi-State Class)

130.    Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully set forth herein.

131.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

132.     Plaintiffs and the other Members of the Consumer Fraud Multi-State Class have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Class because Plaintiffs and Members of the Consumer Fraud Multi-State Class have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

133.     As described herein, Defendant engaged in unfair and/or deceptive conduct, including, but not limited to, representing on its label for the Products that they contain "750mg Hemp Extract" with no reasonable basis to do so.

134.     Defendant intended that Plaintiffs and each of the other Members of the Consumer Fraud Multi-State Class would rely upon its unfair and deceptive conduct and a reasonable person would in fact be misled by this deceptive conduct described above.

135.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other Members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

136.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT 5**
**Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(On Behalf of the Illinois Subclass and in the Alternative to Count 4)**

137.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

138.     Plaintiffs bring this Count on behalf of the Illinois Subclass.

139.    Plaintiffs and the Illinois Subclass members are consumers under the Illinois Consumer Fraud Act and Defendant is a "person" within the meaning of 815 Ill. Comp. Stat. 510/1(5).

140.    Defendant engaged, and continues to engage, in the wrongful conduct alleged herein in the course of trade and commerce, as defined in 815 ILCS 505/2 and 815 ILCS 510/2:

    a.    815 ILCS 505/2 (Illinois Consumer Fraud Act) prohibits:

        [u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act,' approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

    b.    815 ILCS 510/2 provides that:

        [A] person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; ... (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have...; (7) represents that goods or services are of a particular standard, quality, or grade... if they are not; ... [and] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

141.    The business practices of Defendant were unfair because Defendant knowingly sold Plaintiffs and the other Class members the Products that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiffs and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiffs and the other Class members or to competition under all of the circumstances.  Moreover, in light of Defendant's exclusive

knowledge of the Products containing not as much hemp extract as advertised, the injury is not one that Plaintiffs or the other Class members could have reasonably avoided.

142.   Defendant provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements and other information to consumers regarding the quality and nature of the Products such that it contained a certain amount of hemp extract which is not the case.

143.   Defendant engaged in unconscionable commercial practices in failing to reveal material facts and information about the hemp extract amount within the Products, which did, or tended to, mislead Plaintiffs and the Illinois Subclass about facts that could not reasonably be known by the consumer including but not limited to the fact that the Products did not have the amount of hemp extract that was stated on the Products' labeling and in the Products' marketing and advertising for the Products.

144.   Defendant made material representations and statements of fact to Plaintiffs and the Illinois Subclass members that resulted in Plaintiff and the Illinois Subclass reasonably believing the state of affairs to be other than what it actually was, such as that the Products stated on the label "750mg Hemp Extract" which is not the case.  Plaintiffs reasonably relied on this labeling and representation when purchasing the Products.

145.    Defendant intended that Plaintiffs and the other members of the Illinois Subclass rely on their misrepresentations and omissions described above, so that Plaintiffs and other class members would purchase the Products.

146.   Had Defendant disclosed the omitted material or not misrepresented the characteristics of the Products, Plaintiffs and other members of the Illinois Subclass would not have purchased the Products or would have paid less for them.

147.    The foregoing acts, omissions and practices proximately caused Plaintiffs and the other members of the Illinois Subclass to suffer actual damages in the form of, *inter alia*, loss of the benefit of the bargain, diminution in value, and other damages to be asserted at trial.

148.    Defendant's conduct was knowing, intentional, and malicious, and demonstrated a complete lack of care and recklessness and was in conscious disregard for the rights of Plaintiffs and Illinois Subclass Members.

149.    As a direct and proximate result of Defendant's unfair and deceptive trade practices, Plaintiffs and the other Class members have suffered ascertainable loss and actual damages. Plaintiffs and the other Class members who purchased the Products would not have purchased the Products, or, alternatively, would have paid less for them had the truth about the lower amount of hemp extract than advertised been disclosed. Plaintiffs and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under 815 Ill Comp. Stat. 505/1, *et seq.*

## COUNT 6
## VIOLATION OF THE NEW YORK
## DECEPTIVE TRADE PRACTICES ACT ("GBL")
### (New York Gen. Bus. Law § 349)
### (On Behalf of The New York Subclass and in the alternative to Count 4)

150.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

151.    Plaintiff Eric Fishon asserts this Count on behalf of himself and the New York Subclass.

152.    The New York Deceptive Acts and Practices Act makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

153.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive

acts and practices by misrepresenting that the Products contained 750 mg of hemp extract on the Product packaging.

154.   Defendant's business practice of marketing, advertising, and promoting its Products in a misleading, inaccurate, and deceptive manner constitutes unconscionable commercial practice, deception, and misrepresentation and, accordingly, constitutes multiple, separate violations of Section 349 of the New York General Business Law.

155.   In marketing, advertising, and promoting the Products to consumers, including Plaintiff Fishon and members of the New York Subclass, Defendant materially misrepresented and omitted key aspects regarding the Products throughout the United States, including the State of New York.

156.   The foregoing deceptive acts and practices were directed at consumers.

157.   The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics, ingredients, benefits, quality, and nature of the Products to induce consumers to purchase the same, and/or to pay a premium for the Products.

158.   Defendant's unconscionable commercial practices, false promises, misrepresentations, and omissions set forth in this Complaint are material in that they relate to matters which reasonable persons, including Plaintiff Fishon and members of the New York Subclass, would attach importance to in making their purchasing decisions or conducting themselves regarding the purchase of the Products.

159.   Plaintiff Fishon and members of the New York Subclass were injured because: (a) they would not have purchased the Products, or would not have purchased the Products on the same terms, had they known that the Products in fact contained less than 750 mg of hemp extract;

43

(b) they paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because they contained less hemp extract, and thus had less perceived efficacy, than the 750 mg hemp extract product that was advertised, marketed, and sold. As a result, Plaintiff Fishon and the New York Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Products or the difference in value between the Products as advertised and the Products as actually sold.

160.    On May 7, 2020, Plaintiffs sent a notice and demand letter to Defendant Charlotte's Web, Inc. which outlined how its conduct in misrepresenting the contents of the Products regarding the amount of hemp extract constituted a breach of New York Gen. Bus. Law § 349.

161.    On behalf of Himself and other members of the New York Subclass, Plaintiff Fishon seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

### COUNT 7
### FALSE ADVERTISING
### (New York Gen. Bus. Law § 350)
### (On Behalf of The New York Subclass)

162.    Plaintiff Fishon brings this Count individually and on behalf of the members of the New York Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

163.    Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way and which constitutes false advertising in violation of Section 350 of the New York General Business Law.

164. Defendant's false, misleading, and deceptive statements and representations of fact include but are not limited to the representations that the Products contained 750 mg of hemp extract, when they contained much less than that amount of hemp extract.

165. Defendant also directed these representations to consumers such as Plaintiff Fishon.

166. Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the representations that the Products contained 750 mg of hemp extract were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

167. Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the representations that the Products contained 750 mg of hemp extract, when they contained a far lesser amount of hemp extract, have resulted in consumer injury or harm to the public interest.

168. Plaintiff Fishon and members of the New York Subclass have been injured because: (a) they would not have purchased the Products had they known that the Products contained less than 750 mg of hemp extract; (b) they paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because they contained less than 750 mg of hemp extract.

169. As a result, Plaintiff Fishon and the New York Subclass have been damaged in an amount to be proven at trial, but not less than either the full purchase price of the Products, or the difference in value between the Products as advertised and the Products as actually sold.

170. As a result of Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the representations that the Products contained 750 mg of hemp extract, Plaintiff Fishon and members of the New York Subclass have suffered and continue to suffer economic injury.

171.    Plaintiff Fishon and members of the New York Subclass suffered an ascertainable loss caused by Defendant's misrepresentations because they paid more for the Products than they would have had they known the truth about the Products.

172.    On May 7, 2020, Plaintiffs sent a notice and demand letter to Defendant Charlotte's Web, Inc. which outlined how its conduct in misrepresenting the contents of the Products regarding the amount of hemp extract constituted a breach of New York Gen. Bus. Law § 349 *et seq*.  The same conduct for which notice was given via that letter constitutes a breach of New York Gen. Bus. Law § 350.

173.    On behalf of himself and other members of the New York Subclass, Plaintiff Fishon seeks to enjoin Defendant's unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT 8**
**VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT,**
**Fla. Stat. §§ 501.201, *et seq.***
**(On behalf of the Florida Subclass and in the Alternative to Count 4)**

174.    Plaintiff Amy Hucke brings this Count on behalf of themselves and the Florida Subclass against Defendant and repeat and re-allege all previous paragraphs, as if fully included herein.

175.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce.

176.     By the acts and conduct alleged herein, Defendant has committed unfair or deceptive acts and practices by misrepresenting the Products contained "750mg Hemp Extract" when in fact the Products contained significantly less.

177.    Defendant's business practices of marketing, advertising, and promoting the Products in a misleading, inaccurate, and deceptive manner by misrepresenting that the Products contained "750mg Hemp Extract" is an unconscionable commercial practice, deceptive, and a misrepresentation, which constitutes multiple, separate violations of Fla. Stat. § 501.204(1).

178.    In marketing, advertising, and promoting the Products to consumers, including Plaintiff Amy Hucke and members of the Florida Subclass, as set forth in this Complaint, Defendant made material misrepresentations and omissions throughout the United States, including Florida.

179.    Defendant's false, misleading and deceptive statements and representations of fact were and are directed at consumers.

180.    Defendant's false, misleading and deceptive statements and misrepresentations of fact were and are likely to mislead reasonable consumers acting reasonably under the circumstances.

181.    Defendant's false, misleading and deceptive statements and representations of fact have resulted in consumer injuries and harm to the public interest.

182.    The foregoing deceptive acts and practices are misleading in a material way because Defendant fundamentally misrepresents the characteristics, ingredients, benefits, quality, and nature of the Products to induce consumers to purchase and pay a premium for them.

183.    Defendant's unconscionable commercial practices, false promises, misrepresentations, and omissions set forth in this Complaint are material in that they relate to matters which reasonable persons, including Plaintiff Amy Hucke and members of the Florida Subclass, would attach importance to in making their purchasing decisions.

184.     Plaintiffs and members of the Florida Subclass were injured because: (a) they would not have purchased the Products, or would not have purchased the Products on the same terms, had they known that the products in fact contained less hemp extract than advertised; (b) they paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because they contained less hemp extract content than advertised.

185.     As a result, Plaintiff Amy Hucke and members of the Florida Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Products or the difference in value between the Products as advertised and the Products as actually sold. On behalf of themselves and other members of Florida Subclass, Plaintiff Amy Hucke seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three times the actual damages, and reasonable attorneys' fees.

**COUNT 9**
**VIOLATIONS OF SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT,**
**S.C. Code Ann. §§ 39-5-10, *et seq*.**
**(On behalf of the South Carolina Subclass)**

186.     Plaintiff Shaida Benson brings this Count on behalf of herself and the South Carolina Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

187.     Defendant is a "person," as defined by S.C. Code Ann. § 39-5-10(a).

188.     South Carolina's Unfair Trade Practices Act (SCUTPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20.

189.     Defendant advertised, offered, or sold goods or services in South Carolina and engaged in trade or commerce directly or indirectly affecting the people of South Carolina, as defined by S.C. Code Ann. § 39-5-10(b).

190.    Defendant's business practices of marketing, advertising, and promoting the Products in a misleading, inaccurate, and deceptive manner by misrepresenting that the Products contained "750mg Hemp Extract" is an unconscionable commercial practice, deceptive, and a misrepresentation, which constitutes multiple, separate violations of the SCUPTA.

191.    Defendant's acts and practices had, and continue to have, the tendency or capacity to deceive.

192.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

193.    Defendant's business acts and practices offend an established public policy, or are immoral, unethical, or oppressive.

194.    Defendant's unfair and deceptive acts or practices adversely affected the public interest because such acts or practices have the potential for repetition.

195.    Plaintiff Shaida Benson and members of the South Carolina Subclass were injured because: (a) they would not have purchased the Products, or would not have purchased the Products on the same terms, had they known that the products in fact contained less hemp extract than advertised; (b) they paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because they contained less hemp extract content than advertised.

196.    As a result, Plaintiff Shaida Benson and members of the South Carolina Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Products or the difference in value between the Products as advertised and the Products as actually sold. On behalf of herself and other members of South Carolina Subclass, Plaintiff Shaida Benson seeks to enjoin the unlawful acts and practices described herein, to recover actual damages

or fifty dollars, whichever is greater, three times the actual damages, and reasonable attorneys' fees.

### COUNT 10
### VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT OF 1977
### Tenn. Code Ann. § 47-18-101, *et seq.*
### (On behalf of the South Tennessee Subclass)

197. Plaintiff Chelsey DiDomenico brings this Count on behalf of herself and the Tennessee Subclass against Defendant and repeats and re-alleges all previous paragraphs, as if fully included herein.

198. The Tennessee Plaintiff and the Tennessee State Subclass members are "natural persons" and "consumers" within the meaning of Tenn. Code § 47-18-103(2).

199. Defendant is engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tenn. Code § 47-18-103(9).

200. The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code § 47-18-104.

201. Defendant's business practices of marketing, advertising, and promoting the Products in a misleading, inaccurate, and deceptive manner by misrepresenting that the Products contained "750mg Hemp Extract" is an unconscionable commercial practice, deceptive, and a misrepresentation, which constitutes multiple, separate violations of the Tennessee CPA.

202. Defendant's acts and practices had, and continue to have, the tendency or capacity to deceive.

203. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

204.    Defendant's business acts and practices offend an established public policy, or are immoral, unethical, or oppressive.

205.    Defendant's unfair and deceptive acts or practices adversely affected the public interest because such acts or practices have the potential for repetition.

206.    Plaintiff Chelsey DiDomenico and other members of the Tennessee Subclass were injured because: (a) they would not have purchased the Products, or would not have purchased the Products on the same terms, had they known that the products in fact contained less hemp extract than advertised; (b) they paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because they contained less hemp extract content than advertised.

207.    As a result, Plaintiff Chelsey DiDomenico and members of the Tennessee Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Products or the difference in value between the Products as advertised and the Products as actually sold. On behalf of herself and other members of Tennessee Subclass, Plaintiff Chelsey DiDomenico seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three times the actual damages, and reasonable attorneys' fees.

## COUNT 11
## VIOLATIONS OF OREGON UNLAWFUL TRADE PRACTICES ACT,
## Or. Rev. Stat. §§ 646.608, *et seq*.
## (On behalf of the Oregon Subclass)

208.    Plaintiff Caitlin Campbell, on behalf of herself and the Oregon Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

209.    Defendant is a "person," as defined by Or. Rev. Stat. § 646.605(4).

210.    Defendant engaged in the sale of "goods and services," as defined by Or. Rev. Stat. § 646.605(6)(a).

211.    Defendant sold "goods or services," as defined by Or. Rev. Stat. § 646.605(6)(a).

212.    Defendant advertised, offered, or sold goods or services in Oregon and engaged in trade or commerce directly or indirectly affecting the people of Oregon.

213.    Defendant engaged in unlawful practices in the course of its business and occupation, in violation of Or. Rev. Stat. § 646.608, including, *inter alia*, the following unlawful practices: representing that its goods and services have approval, characteristics, uses, benefits, and qualities that they do not have, in violation of Or. Rev. Stat. § 646.608(1)(e); representing that its goods and services are of a particular standard or quality if they are of another, in violation of Or. Rev. Stat. § 646.608(1)(g); advertising its goods or services with intent not to provide them as advertised, in violation of Or. Rev. Stat. § 646.608(1)(i); and concurrent with tender or delivery of its goods and services, failing to disclose any known material defect, in violation of Or. Rev. Stat. § 646.608(1)(t).

214.    Defendant's business practices of marketing, advertising, and promoting the Products in a misleading, inaccurate, and deceptive manner by misrepresenting that the Products contained "750mg Hemp Extract" is an unconscionable commercial practice, deceptive, and a misrepresentation, which constitutes multiple, separate violations of the Oregon Unlawful Trade Practices Act.

215.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

216.    Plaintiff Caitlin Campbell and other members of the Oregon Subclass were injured because: (a) they would not have purchased the Products, or would not have purchased the

Products on the same terms, had they known that the products in fact contained less hemp extract than advertised; (b) they paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because they contained less hemp extract content than advertised.

217.    As a result, Plaintiff Caitlin Campbell and members of the Oregon Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Products or the difference in value between the Products as advertised and the Products as actually sold. On behalf of herself and other members of Oregon Subclass, Plaintiff Caitlin Campbell seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or two hundred dollars, whichever is greater, three times the actual damages, and reasonable attorneys' fees.

**COUNT 12**
**VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT**
**Mich. Comp. Laws §§ 445.903,** *et seq.*
**(On behalf of the Michigan Subclass and in the alternative to Count 4)**

218.    Plaintiff Hadel Toma, individually and on behalf of the Michigan Subclass, incorporates by reference all previous paragraphs of this Complaint as if fully stated herein.

219.    Defendant and Michigan Class members are "persons" as defined by Mich. Comp. Laws Ann. § 445.903(d).

220.    Defendant advertised, offered, or sold goods or services in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws Ann. § 445.903(g).

221.    Defendant engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws Ann. § 445.903(1), including: (a) representing that its goods and services have characteristics, uses, and benefits that they do not

have, in violation of Mich. Comp. Laws Ann. § 445.903(1)(c); (b) representing that its goods and services are of a particular standard or quality if they are of another in violation of Mich. Comp. Laws Ann. § 445.903(1)(e); (c) making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, in violation of Mich. Comp. Laws Ann. § 445.903(1)(bb); and (d) failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter, in violation of Mich. Comp. Laws Ann. § 445.903(1)(cc).

222.     Defendant marketed, advertised, and promoted the Products in a misleading, inaccurate, and deceptive manner by misrepresenting that the Products contained "750mg Hemp Extract."

223.     Defendant's representations were material because they were likely to deceive reasonable consumers.

224.     Defendant induced the Plaintiffs and Michigan Class members to rely on its misrepresentations and omissions.

225.     Defendant recklessly disregarded Plaintiffs and Michigan Class members' rights.

226.     Defendant has actual knowledge that its Products contain less than 750mg hemp extract, putting it on notice that Defendant's Products were not as they advertised.

227.     As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and Michigan Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in treating the damage caused by them.

228.    Plaintiffs and Michigan Class members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $250, declaratory relief, and any other relief that is just and proper.

### RELIEF DEMANDED

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

      a.      For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes and Plaintiffs' attorneys as Class Counsel;

      b.      For an order declaring that Defendant's conduct violates the statutes referenced herein;

      c.      For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

      d.      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

      e.      For prejudgment interest on all amounts awarded;

      f.      For an order of restitution and all other forms of equitable monetary relief;

      g.      For injunctive relief as pled or as the Court may deem proper; and

      h.      For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

### JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: June 11, 2020

Respectfully submitted,

/s/ *Gary M. Klinger, Esq.*
**MASON LIETZ & KLINGER, LLP**
Gary M. Klinger
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60630
Phone: 312.283.3814
gklinger@masonllp.com

Gary E. Mason*
David K. Lietz*
**MASON LIETZ & KLINGER, LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Tel: 202-640-1168
gmason@masonllp.com
dlietz@masonllp.com

Charles E. Schaffer*
David C. Magagna, Jr.*
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA  19106
Tel:  215-592-1500
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

J. Hunter Bryson*
WHITFIELD BRYSON, LLP
641 S St. NW Washington, DC 20001
Tel: 919-539-2708
hunter@whitfieldbryson.com

*pro hac vice to be filed*

*Attorneys for Plaintiffs*